964 A.2d 354

**Mary Elizabeth WILSON, Appellant**

v.

**Samir EL–DAIEF, M.D., Montgomery Hospital and Montgomery Hospital Medical Center, Appellees.**

Supreme Court of Pennsylvania.

Argued Oct. 21, 2008.

Decided Feb. 19, 2009.

162

164

Thomas L. Gowen, Jr., Esq., Locks Law Firm, Philadelphia, for Mary Elizabeth Wilson.

Frank P. Murphy, Esq., Murphy Woodward & Haskins, Norristown, for amicus curiae Pennsylvania Association for Justice.

Jacqueline M. Reynolds, Esq., Kimberly A. Boyer–Cohen, Esq., Marshall, Dennehey, Warner, Coleman & Goggin, P.C., Bethlehem, for Samir El–Daief.

BEFORE: CASTILLE, C.J., and SAYLOR, EAKIN, BAER, McCAFFERY and GREENSPAN, JJ.

*OPINION*

Justice SAYLOR.

We allowed appeal on a limited basis to consider the application of the statute of limitations in this medical malpractice case in light of *Fine v. Checcio*, 582 Pa. 253, 870 A.2d 850 (2005), and *Caro v. Glah*, 867 A.2d 531 (Pa.Super.2004).

In October 2003, Appellant, Mary Elizabeth Wilson, filed a writ of summons against Appellees, Samir El–Daief, M.D., and Montgomery Hospital Medical Center. The ensuing complaint was based on alleged negligence associated with surgical procedures performed by Dr. El–Daief on Appellant's wrist and hand in May and August 2000. The central allegation was that Dr. El–Daief negligently lacerated the radial nerve in Appellant's wrist during one of the surgeries. Appellees sought summary judgment, invoking the governing two-year statute of limitations, *see* 42 Pa.C.S. § 5524(2). In response, Appellant relied on the discovery rule, which operates to toll the running of the statute of limitations for latent injuries, or injuries of unknown etiology, until the plaintiff knew or should have known she was injured by the conduct of another. *See Fine*, 582 Pa. at 267–68, 272–74, 870 A.2d at 858–59, 862 (holding that defendant dentists were not entitled to summary judgment in malpractice actions commenced more than two years after the relevant dental procedures, where factual questions remained as to the plaintiffs' diligence).

The common pleas court awarded summary judgment. *See Wilson v. El–Daief*, No. 03–19723, *slip op.* (C.P. Montgomery Jan. 26, 2007). It explained that, after the second surgery, Appellant experienced constant, persistent, excruciating pain; within several weeks, her hand contracted into a fist, her right elbow bent inward, and her right shoulder drew upward. In these circumstances, the court determined that the cause of action arose in August 2000 (on the date of the second surgery) and that Appellant failed to meet the applicable two-year limitations period. In its analysis, the court referenced the following passage from *Pocono International Raceway, Inc. v. Pocono Produce, Inc.*, 503 Pa. 80, 468 A.2d 468 (1983):

[T]he statute of limitations begins to run as soon as the right to institute and maintain a suit arises; lack of knowledge, mistake or misunderstanding do not toll the running of the statute of limitations, even though a person may not discover his injury until it is too late to take advantage of the appropriate remedy, this is incident to a law arbitrarily making legal remedies contingent on mere lapse of time.

*Wilson,* No. 03–19723, *slip op.* at 4–5 (quoting *Pocono Int'l,* 503 Pa. at 84–85, 468 A.2d at 471).

The common pleas court also concluded that the discovery rule did not apply to toll the running of the limitations period. Initially, the court noted that the application of this principle "arises from the *inability* of the injured, *despite the exercise of due diligence,* to know of the injury or its cause." *Id.* at 5 (quoting *Pocono Int'l,* 503 Pa. at 85, 468 A.2d at 471 (emphasis in original)). Further, the court indicated that "the fact that a plaintiff is not aware that the defendant's conduct is wrongful, injurious or legally actionable is irrelevant to the discovery rule analysis." *Id.* (quoting *Haggart v. Cho,* 703 A.2d 522, 528 (Pa.Super.1997) (citation omitted)). Rather, the common pleas court explained that, once a plaintiff becomes aware of the injury, and who occasioned it, she is under a duty to investigate the matter and commence a cause of action. *See id.* (citing *Haggart,* 703 A.2d at 528–29). The court also highlighted this Court's statement that "[t]he very essence of the discovery rule in Pennsylvania is that it applies only to those situations where the nature of the injury itself is such that no amount of vigilance will enable the plaintiff to detect an injury." *Dalrymple v. Brown,* 549 Pa. 217, 228–29, 701 A.2d 164, 170 (1997) (citing *Pocono Int'l,* 503 Pa. at 85, 468 A.2d at 471).

The common pleas court reasoned:

Plaintiff admits that she began experiencing excruciating pain at the incision point site immediately after the surgery on August 4, 2000, in contrast to the relief she experienced from her symptoms after the May 2000 procedure. Any soreness associated with the May 2000 surgery resolved after the stitches were removed. The pain Plaintiff experi-

enced following the August 2000 procedure increased, despite removal of the stitches. Significantly, Plaintiff believed "something wasn't right," and that Defendant had not taken proper care of her, no later than September 24, 2001. Accordingly, the record before this court compels a finding that even if the discovery rule applied it would not extend the running of the statute of limitations past September 24, 2003. Thus, Plaintiff['s] suit is time-barred because it was not commenced until October 10, 2003.

*Wilson,* No. 03–19723, *slip op.* at 6 (footnote omitted); *see also id.* ("[W]here, as here, the undisputed facts lead unerringly to the conclusion that the length of time it took a plaintiff to discover[ ] the injury or its cause was unreasonable as a matter of law, summary judgment is proper." (quoting *Carns v. Yingling,* 406 Pa.Super. 279, 285, 594 A.2d 337, 340 (1991) (internal quotations deleted))).

On appeal, the Superior Court affirmed in a divided memorandum. *See Wilson v. El–Daief,* 944 A.2d 812 (Pa.Super., 2007). Like the common pleas court, the majority relied upon the severe pain, clubbing, and contraction experienced by Appellant as placing her on notice of a surgical injury, as well as her conclusion, as of September 24, 2001, that Dr. El–Daief had not taken proper care of her. *See id.* at 6. While the majority recognized that Appellant had taken steps to ascertain the nature of "what was patently amiss with her hand," it found her suit was nevertheless out of time. *Id.* In this regard, the court relied on this Court's explanation that "lack of knowledge" does not toll the running of the statute of limitations. *Id.* (citing *Pocono Int'l,* 503 Pa. at 84, 468 A.2d at 471, and *Molineux v. Reed,* 516 Pa. 398, 403, 532 A.2d 792, 794 (1987)). The majority distinguished this Court's decision in *Fine* as pertaining to the doctrine of fraudulent concealment and in light of its conclusion that, given her symptoms, "there could be no doubt in Appellant's mind that she suffered an injury, and that the injury had occurred at the time of the second surgery[.]" *Id.* at 8. Finally, the majority rejected the argument that a definitive diagnosis is essential to the commencement of the limitations period, distinguishing the Supe-

rior Court's prior decision in *Caro*, 867 A.2d at 538 (reversing an award of summary judgment in a medical malpractice action arising out of a surgical injury alleged to have been inflicted more than two years prior to commencement of the action, although the plaintiff had experienced continuous pain and discomfort after the surgery). According to the majority, there was evidence in *Caro* to suggest that the plaintiff may reasonably have believed her symptoms to have been a normal side effect of the treatment procedure; whereas, in the present case, the evidence indicated that Appellant knew by at least September 24, 2001, that her afflictions were not normal. The majority also rejected an argument by Appellant that *Caro* suggests a definitive diagnosis is necessary to trigger the running of the limitations period, since, under Rule of Civil Procedure 1042.3(a), a plaintiff in a professional liability action is required to file a certificate of merit simultaneously with her complaint, or within sixty days thereafter.

Judge, now Justice, Todd filed a dissenting memorandum, advancing the position that the discovery rule issue presented a jury question. *See generally Fine*, 582 Pa. at 268, 870 A.2d at 858 ("Since [application of the discovery rule] involves a factual determination as to whether a party was able, in the exercise of reasonable diligence, to know of his injury and its cause, ordinarily, a jury is to decide it."). The dissent developed that, following her second surgery, Appellant continued treating with Dr. El–Daief for the next thirteen months, during which time she was also examined by an orthopedic surgeon, James Nutt, M.D., who repeatedly referred her back to Dr. El–Daief. *See* Deposition of Mary Elizabeth Wilson, N.T., Apr. 28, 2005, at 105 (describing herself as a "bouncing ball" between Drs. Nutt and El–Daief). The dissent also highlighted Dr. El–Daief's deposition testimony, to the effect that Dr. Nutt reported to him a differential diagnosis encompassing four possibilities, only one of which was a laceration of the radial nerve, as well as Dr. El–Daief's contention that such a laceration could be due to nonsurgical reasons. Deposition of Samir El–Daief, M.D., N.T., May 5, 2005, at 100–01 ("[T]hat lacerated nerve could have been due to a whole multitude of

possibilities, meaning there's more than one reason that the nerve could be possibly lacerated.").

Judge Todd recognized that, regarding her last visit to Dr. Nutt's office, Appellant testified:

> The last time I went to see Dr. Nutt, he asked me why I was there. And I said, Dr. El–Daief told me to come back to see you. He said, Oh no. He said, You go back over there to Dr. El–Daief. You are his patient. He says, It is just like you never came here. He said, You go back to him. And that is when I said, okay, something is wrong here. Something is really wrong.

*Wilson,* No. 03–19723, *slip op.* at 2 (Todd, J., dissenting) (quoting Wilson Dep. at 105). Judge Todd observed, however, that on her following visit to Dr. El–Daief, Appellant testified that she was told nothing was wrong with her. *See id.* at 2–3 (quoting Wilson Dep. at 106–07).

The dissent acknowledged that, by this point in September 2001 Appellant had clearly lost confidence in Dr. El–Daief, but she stressed that an injured party's loss of confidence in her doctor, without more, is insufficient to trigger the running of the statute of limitations. *See id.* at 3 (citing *Caro v. Glah,* 867 A.2d 531, 538 (Pa.Super.2004)). Further, Judge Todd did not agree with the majority that Appellant's statement that she knew "something was wrong" was a sufficient awareness of the fact that she was injured, and who injured her, so as to trigger the statute of limitations. Again, the dissent relied on Dr. El–Daief's denial of any injury and Dr. Nutt's advancement to him of four possible causes for Appellant's condition. While the dissent noted that the circumstances certainly implicated a duty to further investigate the source of her problems, Appellant's suspicions did not, in her view, trigger the statute of limitations.

Moreover, Judge Todd could not conclude that, as a matter of law, Appellant's actions in attempting to discern her injury were unreasonable. She reasoned:

> Appellant was seen by two physicians over the course of some 13 months to no avail, with her treating physician

ultimately telling her there was nothing wrong with her. Less than three weeks after concluding, in September 2001, that "something was wrong," Appellant sought and visited a third physician, Dr. Scott Fried, who she [first] saw on October 10, 200[1]. Dr. Fried's treatment of Appellant ultimately led to the definitive conclusion that Appellant's complications were the result of Dr. El–Daief having lacerated Appellant's radial nerve during her surgery in August 2000. Under these circumstances, and recognizing that the concept of reasonable diligence "is sufficiently flexible ... to take into account the difference[s] between persons and their capacity to meet certain situations and the circumstances confronting them at the time in question," *Fine*, 870 A.2d at 858 (internal quotation marks omitted and alterations original), a jury could reasonably conclude that, by the time she sought to consult with Dr. Fried in October 2001, Appellant had been diligent in ascertaining the existence and cause of her injury. *Cf. Ward v. Rice*, 828 A.2d 1118, 1125 (Pa.Super.2003) (finding that appellant was not unquestionably unreasonable as a matter of law in ascertaining cause and source of her injury where, *inter alia*, her treating doctor repeated[ly] assured her she would fully recuperate).

*See Wilson*, No. 03–19723, *slip op.* at 4–5 (Todd, J., dissenting). Given this reasoning, the dissent declined further comment concerning the relationship between the discovery rule and the requirement of a certificate of merit in professional liability actions. *See id.* at 5 n. 1.

Again, appeal was allowed to assess the consistency of the Superior Court's decision with the *Fine* and *Caro* decisions.

 Summary judgment is appropriate, *inter alia*, where there is no genuine issue of any material fact as to a necessary element of the cause of action or defense that could be established by additional discovery. *See* Pa.R.C.P. No. 1035.2(1). In considering the merits of a motion for summary judgment, the record is viewed in the light most favorable to the non-moving party, and doubts as to the presence of a genuine issue of material fact are resolved against the moving

party. *Fine,* 582 Pa. at 265, 870 A.2d at 857. The appellate review is for errors of law or abuse of discretion. *See id.* at 265 n. 3, 870 A.2d at 857 n. 3. In terms of whether there are genuine issues of material fact, the appellate review is plenary. *See id.*

The parties agree at least in the abstract that, under the discovery rule, the applicable limitations period commences when the plaintiff learns that she has an injury and its cause. *See Fine,* 582 Pa. at 267, 870 A.2d at 858 ("As the discovery rule has developed, the salient point giving rise to its application is the inability of the injured, despite the exercise of reasonable diligence, to know that he is injured and by what cause." (citation omitted)). They dispute, however, whether Appellant's severe pain and physical manifestations in close proximity to the surgery demonstrate knowledge (actual or constructive) of such factors. Appellant, for her part, stresses her persistent efforts (reflected in twenty medical appointments over an approximately fourteen-month period) to secure a medical explanation and her physicians' inability to pinpoint injury and cause. In Appellant's words,

> The majority of the Superior Court ... determined that there could be no doubt in the mind of a high school educated lay person as to the fact that she had an injury and that it was caused at the time of the second surgery. Yet strangely the court neglected to address the fact that although he did see the exact same physical condition and hear her complaints of pain the defendant surgeon had no idea what was causing the pain as late as the last time that he saw her on September 24, 2001, which fact is undisputed. Furthermore, the court failed to explain how a person with no medical education would be expected to know that the source of her pain and contractures was a surgical injury to a sensory nerve when a competent orthopedic surgeon consulting with the defendant (Dr. Nutt) had only a four part differential diagnosis, the first three parts of which were natural conditions (Epicondylitis, arthritis or deQuervian's disease). Only his last diagnosis on the differential was a lacerated radial nerve, and even then Dr. El–Daief

testified at his deposition that this could have occurred other than at surgery. He testified that in December of 2000 he did not consider an injury to the radial nerve to be on his differential diagnosis because he did not consider that her symptoms were suggestive of a radial nerve injury (Record 220a, El–Daief N.T. 95). He further stated that he had ruled out an injury to the radial nerve by September 2001 (Record 224a, El–Daief N.T. 111).

Brief for Appellant at 26–27.[1]

Appellant places her case within a category of cases in which an injured person may suffer pain but be unable to detect an actual injury and/or its cause, analogizing her circumstances to the surgical-sponge cases. *See, e.g., Ayers v. Morgan,* 397 Pa. 282, 154 A.2d 788 (1959) (holding that a plaintiff's medical malpractice action filed nine years after a surgery was not time-barred, although he suffered long-standing pain as a result of a sponge inadvertently left in his body after surgery, where the plaintiff could not have known the source of his pain). She suggests the necessity of understanding the "nature of the injury" as the trigger to the limitations period, which, at least in her own case, she equates to a specific medical diagnosis. Appellant regards the *Caro* decision, also authored by Judge Todd, as a close cousin to her own case and criticizes the Superior Court majority for departing from *Caro* by equating a plaintiff's mere perception that something is not normal and loss of confidence in her physician with the requisite knowledge of injury and cause. *See Caro,* 867 A.2d at 538 ("In light of the new requirements of Rule 1042.3, we now hold that evidence that an injured party appeared to have lost confidence in his or her physician,

---

1. *See also id.* at 32 ("Nineteen medical appointments in thirteen months followed by the prompt change to a new surgeon once she concluded that Dr. El–Daief could not help her anymore should be more than sufficient to meet the test of due diligence."); *accord* Brief of Amicus The Pennsylvania Association for Justice at 8 ("To suggest that the Plaintiff's knowledge of the cause of her pain is so clear and free from doubt when the treating physicians were not able to reach such a conclusion, and no physician raised the spectre of surgical error to Plaintiff, is to ascribe to her medical knowledge beyond what is reasonable for this medically untrained Plaintiff.").

without more, is insufficient to trigger the running of the statute of limitations where a plaintiff has diligently sought to discover the cause of his or her injury.").

Appellees, on the other hand, emphasize that, after Appellant's second surgery, she suffered prolific symptoms in the area of her surgery, as well as in contiguous parts of her body, which did not exist prior to the surgery. Appellees contrast this result with the results of her first surgery, after which the pain quickly resolved. In light of Appellant's continuous pain, the clubbing of her hand, the displacement of her elbow, and the drawing of her shoulder, Appellees contend she was on sufficient notice of her alleged injury and its asserted cause to "awaken inquiry." *Fine*, 582 Pa. at 267, 870 A.2d at 858 (citation omitted). Appellees characterize the injury as "physically objective" and further highlight Appellant's conclusion, by September 24, 2001 (more than two years prior to her commencement of the legal proceedings), that something was wrong and she had not received appropriate care from Dr. El–Daief. Appellees note that Appellant could have learned of Dr. Nutt's differential diagnosis including the possibility of nerve damage had she requested a copy of her medical records.[2] Appellees reference a line of cases indicating that a plaintiff need not know the precise medical cause of her harm, that she has been harmed by a negligent act, or that she has a cause of action, before the limitations period will begin to run. *See, e.g., Murray v. Hamot Med. Center*, 429 Pa.Super. 625, 634, 633 A.2d 196, 201 (1993). According to Appellees, *Caro* is distinguishable because undisputed facts of record demonstrate more than just Appellant's apparent loss of confidence in her physician, and the present circumstances are more akin to *Bigansky v. Thomas Jefferson University Hospital*, 442 Pa.Super. 69, 84–87, 658 A.2d 423, 427, 430–31 (1995) (affirming an award of summary judgment in a dental malpractice case and emphasizing that a plaintiff need not know the precise medical cause of injury before the limitations period commences).

---

**2.** The present record suggests that Dr. Nutt's differential diagnosis was communicated to Dr. El–Daief, but not to Appellant.

Appellees also challenge any notion that *Caro* imposes a heightened standard for defendants invoking a statute-of-limitations defense in a professional liability action and oppose any requirement of a definitive diagnosis to trigger commencement of the applicable limitations period. *See* Brief for Appellees at 7 ("To now require that a definitive diagnosis is required in a malpractice case before the statute begins to run would create a statute of limitations standard for malpractice cases that does not apply to any other type of case and would effectively rule that a defendant could never get summary judgment on a statute of limitations defense in a malpractice case."). In this regard, they note that the Rules of Civil Procedure provide measures to prevent a plaintiff from being deprived of her day in court. *See* Pa.R.C.P. Nos. 1007(1), 1042.3 (permitting a plaintiff to file an action by writ of summons, and tying the certificate of merit requirement in professional liability actions to the filing of a complaint); *McNeil v. Jordan*, 586 Pa. 413, 443–45, 894 A.2d 1260, 1278–79 (2006) (discussing the availability of pre-complaint discovery); Pa.R.C.P. No. 1042.3(d), Note (reflecting the availability of multiple extensions to the period allowed for the filing of a certificate of merit); 1042.5, Note (noting that courts are authorized to permit discovery for a licensed professional to make a determination as to whether a defendant deviated from accepted professional standards).

As reflected in the parties' arguments, the baseline legal standards are set forth in *Fine*, 582 Pa. at 266–68, 870 A.2d at 857–59. Initially, *Fine* reflects the general rule that a cause of action accrues, and thus the applicable limitations period begins to run, when an injury is inflicted. *See id.* at 266, 870 A.2d at 857 (citation omitted). In certain cases involving latent injury, and/or instances in which the causal connection between an injury and another's conduct is not apparent, the discovery rule may operate to toll the statute of limitations until the plaintiff discovers, or reasonably should discover, that she has been injured and that her injury has been caused by another party's conduct. *See id.* at 268, 870

A.2d at 859.[3] *Fine* also reflects that the determination concerning the plaintiff's awareness of the injury and its cause is fact intensive, and therefore, ordinarily is a question for a jury to decide. *See id.* at 268, 870 A.2d at 858. However, courts may resolve the matter at the summary judgment stage where reasonable minds could not differ on the subject. *See id.* at 268, 870 A.2d at 858–59; *Cochran v. GAF Corp.*, 542 Pa. 210, 216, 666 A.2d 245, 248 (1995) ("[W]e have not hesitated to find as a matter of law that a party has not used reasonable diligence in ascertaining the cause of an injury thus barring the party from asserting their claim under the discovery rule."). The party relying on the discovery rule bears the burden of proof. *See id.* at 216, 666 A.2d at 249.

While these principles are readily stated, numerous ambiguities arise out of their application.[4] In Pennsylvania, for example, the discovery rule is described sometimes as statutory construction and other times as judicial innovation.[5] On the one hand, the standard for diligence is generally under-

---

3. The purpose of the discovery rule is "to exclude from the running of the statute of limitations that period of time during which a party who has not suffered an immediately ascertainable injury is reasonably unaware he has been injured [or that his injury has been caused by another], so that he has essentially the same rights as those who have suffered such an injury." *Fine*, 582 Pa. at 266–67, 870 A.2d at 858 (citing *Hayward v. Medical Ctr. of Beaver County*, 530 Pa. 320, 325, 608 A.2d 1040, 1043 (1992)).

4. Difficulties in the application of the discovery rule are not unique to Pennsylvania. *See, e.g., Rathje v. Mercy Hosp.*, 745 N.W.2d 443, 448 (Iowa 2008) (explaining that the task of determining when a claim accrues to start the running of the applicable limitations period "has been formidable, largely due to the manifold sequences in which the elements of a tort action can unfold and become discernible to a plaintiff as a signal to pursue a legal remedy for a wrong" (citing *Ruth v. Dight*, 75 Wash.2d 660, 453 P.2d 631, 634 (1969) ("The problem of applying the statute of limitations correctly in medical malpractice cases has been a vexing one and a continuing source of judicial uncertainty."))).

5. *Compare, e.g., Pastierik v. Duquesne Light Co.*, 514 Pa. 517, 520, 526 A.2d 323, 325 (1987) ("Statutory references to the occurrence of an 'injury' or the accrual of a 'cause of action' are subject to judicial interpretation as to the degree of knowledge a plaintiff must possess before the statute will start to run." (citation omitted)), *with Crouse v. Cyclops Indus.*, 560 Pa. 394, 404, 745 A.2d 606, 611 (2000) (characterizing the discovery rule as a "judicially created device").

stood as one entailing "reasonable diligence," *see, e.g., Fine,* 582 Pa. at 267, 870 A.2d at 858, but the Court has also indicated that tolling applies only where "no amount of vigilance will enable the plaintiff to detect an injury." *Dalrymple,* 549 Pa. at 228–29, 701 A.2d at 170. Some of the rubric indicates that the discovery rule will not toll the statute of limitations even where the plaintiff is unaware that the defendant's conduct is injurious, *see, e.g., Burton–Lister v. Siegel, Sivitz and Lebed Assoc.,* 798 A.2d 231, 237 (Pa.Super.2002) (indicating that "the fact that a plaintiff is not aware that the defendant's conduct is wrongful, injurious or legally actionable is irrelevant to the discovery rule analysis"), but the general rule is most often stated in terms of the plaintiff's actual or constructive awareness of an injury caused by another. Even the limited focus on injury and cause is subject to reasonable controversy, since this Court, on occasion, has suggested a broader focus on the plaintiff's knowledge of the fact of a cause of action. *See, e.g., Pastierik,* 514 Pa. at 524, 526 A.2d at 327. Finally, different decisions may be read as suggesting differing litmuses in the application of the terms "injury" and "cause." *Compare, e.g., Caro,* 867 A.2d at 538 (holding, at least under the facts of the case, that the statute of limitations in a medical malpractice action did not begin to run until the plaintiff secured a specific medical diagnosis), *with Fine,* 582 Pa. at 272–73, 870 A.2d at 861–62 (discussing "injury" and "cause" in terms of symptoms and the plaintiff's understanding of their general relationship to a surgical procedure).

■ Some of these inconsistencies are readily resolved. Most cases apply a reasonable-diligence requirement, as opposed to an all-vigilance one, *see, e.g., Fine,* 582 Pa. at 267, 870 A.2d at 858, and reasonable diligence as described in *Fine* is the appropriate formulation.[6] Although the discovery rule evolved out of the common law,[7] it is now appropriately

6. To demonstrate reasonable diligence, a plaintiff is required to establish that he exhibited " 'those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protection of their own interests and the interests of others.' " *Cochran,* 542 Pa. at 217, 666 A.2d at 249 (citations omitted).

7. For a summary of the early evolution of the discovery rule in Pennsylvania, see *Anthony v. Koppers Co.,* 284 Pa.Super. 81, 86–97, 425 A.2d

regarded as an application of statutory construction arising out of the interpretation of the concept of the "accrual" of causes of action. *See* 42 Pa.C.S. § 5502(a); *Pastierik*, 514 Pa. at 520, 526 A.2d at 325. The suggestion that a plaintiff need not know that a defendant's conduct is injurious is true, to the extent that the plaintiff has failed to exercise diligence in determining injury and cause by another, but has limited relevance in scenarios in which the plaintiff has exercised diligence but remains unaware of either of these factors.

The more difficult questions arising in this field pertain to the degree of knowledge (actual or constructive) necessary to commence the running of the limitations period. Surveying cases from other jurisdictions, many have equated "injury" with "legal injury," keying the commencement of the limitations period to such time as the plaintiff has actual or constructive knowledge of her cause of action. *See Rathje v. Mercy Hosp.*, 745 N.W.2d 443, 452–53 (Iowa 2008) (collecting cases and explaining that most state courts "triggered the discovery rule upon knowledge of the cause of action, including at least some knowledge that the conduct of the physician was negligent or wrongful").[8] On the other hand, a substan-

428, 431–36 (1980), *rev'd on other grounds*, 496 Pa. 119, 436 A.2d 181 (1981).

8. In the context of medical malpractice, the District of Columbia Court of Appeals provided the following explanation for the more liberal application of the discovery rule:

> [S]tatutes of limitations are based on the proposition that persons who sleep on their right to commence a cause of action may lose that right after a specified period of time. Thus, a statute of limitations can effectively deprive a person of the opportunity to pursue what may be an otherwise valid claim. In the area of medical malpractice, an individual, more often than not, lacks the requisite expertise to know whether the ill effects of a particular medical treatment resulted from someone's wrongdoing, rather than merely an inevitable or unforeseeable risk of treatment. Because the discovery rule is designed to prevent the accrual of a cause of action before an individual can reasonably be expected to discover that he has a basis for legal redress, the statute should not commence until a claimant knows, or through the exercise of due diligence, should know, that his injury resulted from someone's wrongdoing.

*Bussineau v. President and Dirs. of Georgetown Coll.*, 518 A.2d 423, 430 (D.C.1986); *accord Sutherland v. Estate of Ritter*, 959 So.2d 1004, 1008–09 (Miss.2007) ("[I]n the medical malpractice context, the discov-

tial number of courts have employed a stricter approach grounded on inquiry notice, tying commencement of the limitations period to actual or constructive knowledge of at least some form of significant harm and of a factual cause linked to another's conduct, without the necessity of notice of the full extent of the injury, the fact of actual negligence, or precise cause.[9] *Accord Fine*, 582 Pa. at 267, 870 A.2d at 858 ("[T]here are [very] few facts which diligence cannot discover, but there must be some reason to awaken inquiry and direct diligence in

ery rule may apply in cases where the injury is not latent at all, but where the negligence which caused the known injury is unknown. For instance, a patient who undergoes a medical procedure may develop serious complications which are clearly known. However, if the patient has no reason to know that the doctor's negligence in performing the procedure caused the complications, the discovery rule will apply, even though the injury itself is not latent at all.").

9. Rationale supporting the narrower approach was developed by the United States Supreme Court in the context of the Federal Tort Claims Act, as follows:

> We ... cannot hold that Congress intended that "accrual" of a claim must await awareness by the plaintiff that his injury was negligently inflicted. A plaintiff ... armed with the facts about the harm done to him, can protect himself by seeking advice in the medical and legal community. To excuse him from promptly doing so by postponing the accrual of his claim would undermine the purpose of the limitations statute, which is to require the reasonably diligent presentation of tort claims against the Government. If there exists in the community a generally applicable standard of care with respect to the treatment of his ailment, we see no reason to suppose that competent advice would not be available to the plaintiff as to whether his treatment conformed to that standard. If advised that he has been wronged, he may promptly bring suit. If competently advised to the contrary, he may be dissuaded, as he should be, from pressing a baseless claim. Of course, he may be incompetently advised or the medical community may be divided on the crucial issue of negligence.... But however or even whether he is advised, the putative malpractice plaintiff must determine within the period of limitations whether to sue or not, which is precisely the judgment that other tort claimants must make. If he fails to bring suit because he is incompetently or mistakenly told that he does not have a case, we discern no sound reason for visiting the consequences of such error on the defendant by delaying the accrual of the claim until the plaintiff is otherwise informed or himself determines to bring suit, even though more than two years have passed from the plaintiff's discovery of the relevant facts about injury.

*United States v. Kubrick*, 444 U.S. 111, 123–24, 100 S.Ct. 352, 360, 62 L.Ed.2d 259 (1979) (footnote omitted).

the channel in which it would be successful.") (quoting, indirectly, *Maul v. Rider*, 59 Pa. 167, 171 (1869)).

As it generally has been stated, Pennsylvania's formulation of the discovery rule reflects the narrower of the two overarching approaches to determining accrual for limitations purposes. Moreover, this is the formulation applied in *Fine*, 582 Pa. at 267, 870 A.2d at 858, and reflected in suggested jury instructions, *see* PENNSYLVANIA SUGGESTED STANDARD CIVIL JURY INSTRUCTIONS § 18.01 (PBI Press 2005) (reflecting that the discovery rule applies to toll the limitations period if the jury finds "the plaintiff's suit was filed within two years of the date from which the plaintiff could have first reasonably discovered [his or her] injuries and that it [sic] was caused by the conduct of another person"), and it is beyond the scope of the limited grant of appeal in this case to consider a foundational change.[10]

Further ambiguities arise out of the terms "injury" and "cause." In the present case, for example, there are a number of possible ways to apply them. Appellees' perspective is that injury is reflected in symptoms—Appellant's severe pain and physical clubbing and contraction—and cause in the close temporal relationship between the symptoms and the surgery. Appellant's view, on the other hand, is that "injury" should mean the lacerated nerve, or if the pain and physical symptoms are enough to provide notice of the injury in the abstract, knowledge of the "cause" should encompass at least an appreciation that the nerve was lacerated, if not an understanding of the alleged negligent act. In either event, Appel-

---

10. In light of the above, the following are correct statements: the plaintiff need not know the precise medical cause of her injury, *see Bigansky v. Thomas Jefferson Univ. Hosp.*, 442 Pa.Super. 69, 84, 658 A.2d 423, 430 (1995) (citing *Groover v. Riddle Mem. Hosp.*, 357 Pa.Super. 420, 425, 516 A.2d 53, 57 (1986); *Held v. Neft*, 352 Pa.Super. 195, 200, 507 A.2d 839, 841 (1986)); the plaintiff need not apprehend that her physician was negligent, *see Bickford v. Joson*, 368 Pa.Super. 211, 218, 533 A.2d 1029, 1032–33 (1987); and the plaintiff need not understand she has a cause of action, *DeMartino v. Albert Einstein Med. Ctr.*, 313 Pa.Super. 492, 502–03, 460 A.2d 295, 300 (1983). It must be borne in mind, however, that the requisite actual or constructive knowledge of injury and cause may occur simultaneous with discovery of any or all of the above factors.

lant believes that discovery of her underlying medical condition, or the nature of her condition, was necessary to trigger the commencement of the limitations period, so long as her conduct in pursing such medical explanation may be regarded as reasonably diligent, and particularly in light of the professionals' inability to provide any explanation to her throughout the default period of limitations.

In *Fine*, the holding that the discovery rule could apply hinged on potential confusion between symptoms as manifestation of injury versus typical and temporary conditions surgery may produce. *See Fine*, 582 Pa. at 272–73, 870 A.2d at 861 ("It is important to keep in mind that in this case, the record revealed that facial numbness was indicative of two distinct phenomena."). Thus, atypical and lasting post-surgical symptoms, such as those experienced by Appellant, may trigger the limitations period. In this case, however, there is evidence of potential sources of confusion, in the asserted unwillingness or inability on the part of Dr. El–Daief to recognize injury or cause,[11] *cf. Debiec v. Cabot Corp.*, 352 F.3d 117, 132 (3d Cir.2003) (reasoning that a negative diagnosis may lead a plaintiff to reasonably believe she does not have an injury caused by the defendant), and in the failure of Dr. Nutt to offer Appellant his assessment upon consultation. While we reiterate that knowledge of "injury" and "cause" does not require a precise medical diagnosis, we decline to hold, as a matter of law, that a lay person must be charged with knowledge greater than that which was communicated to her by multiple medical professionals involved in her treatment and diagnosis. *Cf. Bohus v. Beloff*, 950 F.2d 919, 929–30 (3d Cir.1991) (reversing an award of summary judgment on statute of limitations ground, relying, in significant part, on the notion that lay persons should not be charged with greater knowledge of their physical condition than that possessed by

11. Notably, Dr. El–Daief's records reflect a different version of the facts than presented by Appellant. For example, according to the physician's notes, Appellant was doing well for the first three months following her surgery and "more or less [pain] free." *See* Deposition of Samir El–Daief, M.D., N.T., May 5, 2005, at 105.

the physicians on whose advice they must rely). Rather, we conclude that, in the present circumstances, the ordinary rule should apply that factual issues pertaining to the plaintiff's notice and diligence are for the jury. *See Fine*, 582 Pa. at 268, 870 A.2d at 858; *Crouse*, 560 Pa. at 404, 745 A.2d at 611 ("Pursuant to the application of the discovery rule, the point at which the complaining party should reasonably be aware that he has suffered an injury is a factual issue 'best determined by the collective judgment, wisdom and experience of jurors'" (citations omitted)).[12] This approach is particularly appropriate since, although the pertinent inquiry is characterized as objective, *see supra* note 6, it is to be applied with reference to individual characteristics. *See Crouse*, 560 Pa. at 404–05, 745 A.2d at 611 ("Although reasonable diligence is an objective rather than a subjective standard, '[i]t is sufficiently flexible . . . to take into account the difference[s] between persons and their capacity to meet certain situations and the circumstances confronting them at the time in question.'" (citation omitted)).

12. It is worth noting that, were we to apply the view prevailing in most other jurisdictions requiring knowledge of a cause of action, it does not appear that the statute of limitations question would even be an issue for the jury in the present circumstances, since there appears to be no evidence that Appellant possessed evidence of wrongdoing, or enough information to understand she had a cause of action, before October 2001. *See Brin v. S.E.W. Investors*, 902 A.2d 784, 793 (D.C.2006) ("Since patients must rely on their doctors, a person cannot reasonably be expected or required to act until that person has some medical advice to support a linkage between a known injury and wrongdoing of which the person has some evidence."). Thus, while defendants may maintain legitimate reservations about the submission of statute-of-limitations issues to the jury, *cf. Fleming v. Culbert*, 46 Pa. 498, 501 (1864) (expressing concern with tying commencement of a limitations period to notice, since this concept was considered to be so flexible and difficult to prove that it was apprehended that "a jury would fix it one way in this case, and another way in the next, and thus a stable rule of statute law would fluctuate with the changes and chances of the jury-box"), in fact, Pennsylvania imposes a greater burden on plaintiffs vis-à-vis the discovery rule than most other jurisdictions. Again, the discovery rule operates to balance the rights of diligent, injured plaintiffs against the interests of defendants in being free from stale claims, in furtherance of the salient legislative objectives. The balance struck in Pennsylvania has been to require more limited notice to the plaintiff, but to submit factual questions regarding notice to the jury as the fact-finder.

The most favorable passage of Appellant's deposition testimony to Appellees' position is her indication that she had concluded, by September 24, 2001, that Dr. El–Daief had not taken proper care of her.[13] Recognizing that the testimony provides substantial support for Appellees' position in the fact-finding inquiry, we conclude that it does not unambiguously establish notice of injury and cause, particularly in light of other portions of the testimony. *See, e.g.,* Wilson Dep. at 224–25 (reflecting Appellant's indication that she first learned that Dr. El–Daief might have done something wrong in the surgery within several months of the filing of her complaint).

Finally, with full appreciation of the additional requirement imposed upon plaintiffs to obtain a certificate of merit under Rule 1042.3, we decline to retool the discovery rule specific to medical malpractice actions in light of the procedural rule. As developed in the discussion of Appellees' arguments, we believe that the rules allow sufficient flexibility to avoid untenable results.

In his concurring and dissenting opinion, Mr. Justice Baer indicates that the Court's longstanding approach to the discovery rule "places plaintiffs, like Appellant, in the precarious position of being constrained to file a lawsuit before they know whether their resulting symptoms are linked to a physician's malpractice or common side effects of the procedure performed." Concurring and Dissenting Opinion, *op.* at 187, 964 A.2d at 370. This position is unfounded. As developed above, *Fine* took pains to account for legitimate and reasonable confusion—under *Fine,* such a mindset, reasonably held, clearly tolls the limitations period via the discovery rule. *See Fine,* 582 Pa. at 272–73, 870 A.2d at 861.[14] It is also important to

**13.** The passage proceeds as follows:
Q: ... When did you come to the conclusion that Dr. El–Daief had not taken proper care of you?
A: When I kept asking him what was wrong with me and he kept telling me that he didn't see anything wrong.
\* \* \*
Q: And at that point, did you no longer believe Dr. El–Daief?
A: No, I did not believe him.
Wilson Deposition, N.T., Apr. 28, 2005, at 208–09.

**14.** The only uncertainty for diligent plaintiffs in this situation is that legitimacy and reasonableness must be assessed factually, with this

understand that, in this case, there is no evidence that the excruciating and enduring pain, physical contraction, and impaired function reflected in Appellant's testimony were common side effects of her surgery. Indeed, as it developed and persisted, Appellant's post-surgery condition appears to have been regarded by all as extraordinary.

Based on the above premise, the certificate-of-merit requirement, and several other considerations, Justice Baer advances a discovery rule unique to medical malpractice actions which would require that the plaintiff have access to specific medical evidence enabling her to link her injury to the acts of the defendant before the statute of limitations commences. *See* Concurring and Dissenting Opinion, at 187, 193, 964 A.2d at 370, 373.

In the course of this opinion, we have explained that the discovery rule is best justified as an exercise in legislative interpretation rather than judicial innovation.[15] In this regard, it is noteworthy that a certificate-of-merit requirement

determination being relegated to jurors as fact-finders. *See id.* at 268, 870 A.2d at 858. Such uncertainty, however, is an unavoidable consequence of the design of our legal system and is no more or less problematic than many other aspects of our civil justice system which accept less than perfect certainty. For instance, in our jury system, liability is allocated based on a preponderance of the evidence, or a greater than fifty-percent probability, and litigants from both sides face real uncertainty in close cases concerning which way the scales may tip in jurors' minds. Thus, we remain cognizant of the interests of all the litigants in medical malpractice cases: injured persons who may be entitled to redress, and medical professionals who, in the course of their profession, must lay hands on others to facilitate healing.

15. In this regard, we have repeatedly reinforced the clear delineation between the respective roles of the General Assembly and this Court. *See, e.g., Program Admin. Servs., Inc. v. Dauphin County Gen. Auth.*, 593 Pa. 184, 192, 928 A.2d 1013, 1017–18 (2007) ( [I]t is the Legislature's chief function to set public policy and the courts' role to enforce that policy, subject to constitutional limitations particularly as the latter would require some justification for overriding the legislative intent.) (citing *Parker v. Children's Hosp. of Philadelphia*, 483 Pa. 106, 116, 394 A.2d 932, 937 (1978)) (explaining that "the power of judicial review must not be used as a means by which the courts might substitute [their] judgment as to the public policy for that of the legislature"). In light of this allocation of responsibility, it would obviously require some strong justification, such as a constitutional violation, for this Court to override the legislative will. Notably, however, no arguments along such lines are presented in this appeal.

was first adopted by the Legislature in 1996 amendments to the Health Care Services Malpractice Act. *See* Act of November 26, 1996, P.L. 776, No. 135, § 10 (suspended).[16] The requirement was a component of a scheme designed to contain costs of professional liability insurance and encourage prompt determination and adjudication of malpractice claims. *See* 40 P.S. § 1301.102 (superseded). Notably, when the General Assembly decided to require certificates of merit in professional malpractice actions, it did not undertake to enlarge the established approach to the accrual of causes of action in Pennsylvania for purposes of the discovery rule. This is not surprising—in a statute designed to further cost containment and reasonable promptitude, it would have been unusual for the Legislature to increase the exposure of health care professionals and/or render such exposure less determinate.[17] Instead, the General Assembly left undisturbed the long-standing discovery rule tying the commencement of the limitations period to actual or imputed knowledge of injury and cause. In this circumstance, it can be inferred that the Legislature believed the existing rule remained adequate to strike an appropriate balance between the objectives motivating statutory limitations periods and the interests of injured persons, despite a certificate-of-merit requirement.

The concurring and dissenting opinion, on the other hand, does not appear to approach the matter as one of statutory interpretation, but rather, seems to offer a more general perspective on individual justice. Notably, that perspective, as set forth in the opinion, centers on the interests of plaintiffs, with little accounting for the core interest addressed by statutory limitations periods, namely, that of defendants in being free from stale claims. *See Gustine Uniontown Assocs., Ltd. v. Anthony Crane Rental, Inc., L.P.*, 577 Pa. 14, 33, 842 A.2d 334, 346 (2004) ("The purpose of these limitation periods

16. By order dated January 17, 1997, the provision was suspended by this Court pursuant to its authority under Article 5, Section 10(c) of the Pennsylvania Constitution.

17. Such a course obviously would justify increased premiums by insurers, in light of the greater exposure, thus detracting from the cost-containment objective.

is to expedite litigation and thus discourage delay and the presentation of stale claims which may greatly prejudice the defense of such claims. In light of the important purpose served by limitations periods, this Court has held that statutes of limitation are to be strictly construed."). Even if we were to consider moving from statutory interpretation to judicial policymaking, we would consider the interests of litigants on both sides of the spectrum. *Compare, e.g., supra* note 8 *with supra* note 9.

We also add the following perspective to several other assertions made in the concurring and dissenting opinion. The opinion indicates many plaintiffs are deprived of their day in court because they are unable to obtain a certificate of merit within two years after discovery of injury and cause, despite due diligence. *See* Concurring and Dissenting Opinion, at 189–90, 964 A.2d at 371. There is no empirical support offered for this proposition,[18] and, from a defense-oriented perspective, it would as likely be contended that many physicians face unfairness in the form of difficult evidentiary hurdles arising from the requirement to defend aged claims. The concurring and dissenting opinion invokes the image of "plaintiffs who are unsuspecting of a possible malpractice claim due to the latent nature of their injury" as justification for a broader discovery rule. *Id.* at 189–90, 964 A.2d at 371. The opinion, however, does not appear to recognize that the current discovery rule provides protection for just that class of persons by tolling the limitations period until their injuries are (or reasonably should have been) known, after which point two years is allowed to commence an action. *See Fine*, 582 Pa. at 269, 870 A.2d at 859.[19] The opinion bolsters its position by reference to the prospect of physicians' false assurances, *see* Concurring and Dissenting Opinion, at 189–90, 964 A.2d at

18. Further, it is in tension with the understanding, reflected in numerous of this Court's decisions, that there are very few facts which diligence cannot discover after inquiry is awakened. *See Fine*, 582 Pa. at 267, 870 A.2d at 858 (citing cases).

19. Notably, *Fine* selected the longer period arising out of two possible approaches to the discovery rule, over which the Court previously had been strongly divided. *See id.*

371, without acknowledging the doctrine of fraudulent concealment is designed to protect plaintiffs in precisely such circumstances. *See Fine*, 582 Pa. at 270–71, 870 A.2d at 860.[20] The certificate-of-merit procedure is couched in the concurring and dissenting opinion as rigid, but there is no consideration of aspects demonstrating flexibility, such as the use of a writ of summons to toll the running of the limitations period, and the availability of extensions and special discovery. *See* Pa.R.C.P. Nos. 1007(1), 1042.3; *McNeil*, 586 Pa. at 443–45, 894 A.2d at 1278–79. While the opinion makes a strong case concerning Appellant's diligence in pursuing medical treatment, it does not take into account that a diligent investigation may require one to seek legal counsel in a timely fashion. *See Cochran*, 542 Pa. at 217–18, 666 A.2d at 249.[21]

Finally, the concurring and dissenting opinion indicates that the general rule of submission to a jury established in *Fine* is inapplicable, because it is undisputed that Appellant "was unaware of the nature of her injury or its cause until she obtained the medical diagnosis from Dr. Fried on April 23, 2003." Concurring and Dissenting Opinion, at 193 n. 4, 964 A.2d at 373 n. 4. This assumes, however, that a fact-finder could not reasonably determine that Appellant was or should have been aware of an injury (manifested in severe pain and physical contraction and limitations) and its cause (the surgery by Dr. El–Daief), when she experienced prolific symptoms in close proximity to the surgery, apparently well outside the range of identified risks of the procedure. We respectfully

20. Fraudulent concealment does not require fraud in the strictest sense, but rather, includes unintentional deception. *See Fine*, 582 Pa. at 271, 870 A.2d at 860.

21. Although this Court has stressed that the timely pursuit of legal representation may be necessary, Appellant has not discussed the timing of her consultations with counsel. It is certainly possible that discussions with an attorney may expedite medical diagnosis, since attorneys have access to litigation resources and can supply advice concerning what measures (such as exploratory surgery) will best maximize an injured person's chances of recovery. While in this case we find that the absence of a proffer on the matter of legal consultation is not fatal to Appellant's claim at the summary judgment stage, the matter remains available to be considered by a jury in the fact-bound assessment of Appellant's overall diligence.

differ with this assumption. *Accord Fine,* 582 Pa. at 272–73, 870 A.2d at 859.

We do not dispute the reasonableness of Justice Baer's overarching position (which would require specific medical evidence supporting a cause of action) as one way to address the important interests in tension in these cases, depending upon where the balance is struck. We find only that it is a policy position not reflected in Pennsylvania's statutory scheme governing limitations of actions. Absent a constitutional claim, we decline to question the legislative judgment.

The order of the Superior Court is reversed, and the matter is remanded for further proceedings consistent with this opinion.

Justice TODD did not participate in the consideration or decision of this case.

Chief Justice CASTILLE, Justice EAKIN and Justice GREENSPAN join the opinion.

Justice BAER files a concurring and dissenting opinion in which Justice McCAFFERY joins.

Justice BAER, concurring and dissenting.

I agree with the majority that the Superior Court erroneously granted summary judgment in favor of Appellees/Defendants on the basis that Appellant's medical malpractice action was time-barred. I am compelled to write, however, as I believe the convergence of this Court's adoption of the certificate of merit (COM) requirements and our application of the discovery rule in medical malpractice cases has the potential for unbridled mischief. Application of current Pennsylvania jurisprudence places plaintiffs, like Appellant, in the precarious position of being constrained to file a lawsuit before they know whether their resulting symptoms are linked to a physician's malpractice or are common side effects of the procedure performed. Such an absurd consequence resulting from the application of these two countervailing principles of law should not be countenanced. To avert this fundamental unfairness, we should construe the discovery rule so as to toll the statute of limitations until the plaintiff obtains, or with the exercise of

due diligence should have obtained, medical evidence sufficient to enable the plaintiff to link her injury to the acts of the defendant. In the instant case, there is no genuine issue of material fact that the lawsuit was filed within two years of when Appellant, after diligent investigation, obtained medical evidence connecting her injury to Appellee Dr. El Daief's actions. Thus, in my view, Appellant's action was timely filed as a matter of law, and our mandate on remand should simply be for trial on the merits of Appellant's claim.

My analysis begins with an examination of the landscape of medical malpractice jurisprudence in this Commonwealth, which was substantially transformed in 2003, when this Court adopted the COM requirements in the Pennsylvania Rules of Civil Procedure. *See* Pa.R.C.P. 1042.3–1042.8. The COM rules were adopted to curtail the filing of non-meritorious medical malpractice actions, and to provide an expeditious procedure for dismissal of cases filed notwithstanding their lack of merit. *See Womer v. Hilliker*, 589 Pa. 256, 908 A.2d 269, 275 (2006). The expectation was that this new requirement would reduce the burdens imposed upon litigants (e.g., physicians) and the courts by identifying and eliminating non-meritorious claims in an efficient and prompt manner. *Id.*

Specifically, to effectuate such purpose, Pa.R.C.P. 1043.2 provides that in a professional malpractice action, the plaintiff must file with the complaint, or within sixty days thereafter, a certificate of merit signed by the attorney or party attesting that:

> an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm. . . .

Pa.R.C.P. 1042.3(a)(1). The mandatory nature of the COM requirement and the sanction for failing to file a timely COM are made clear in Rule 1042.6, which requires the Prothonotary, upon praecipe of the defendant, to enter a judgment of *non pros* against the plaintiff for failing to file a COM within the

requisite time period, provided no motion for extension has been filed by the plaintiff. Pa.R.C.P. 1042.6. Further, the plaintiff faces obstacles in opening a judgment of *non pros* entered pursuant to Rule 1042.6, as the sole avenue of relief is an appeal to the equitable powers of the court pursuant to Pa.R.C.P. 3051.[1] *Womer*, 908 A.2d at 279.

Thus, plaintiffs must supply a timely statement from a licensed professional, indicating that the defendant's conduct was a cause in bringing about their harm, or risk the entry of a snap judgment against them. Paradoxically, however, under the current state of the law in Pennsylvania, the statute of limitations commences in many cases before the plaintiff, despite the exercise of all due diligence, is able to obtain such a professional opinion. As the majority explains, Pennsylvania has adopted an approach to the discovery rule accepted by a minority of the states, which is grounded on inquiry notice and ties "commencement of the limitations period to actual or constructive knowledge of at least some form of significant harm and of a factual cause linked to another's conduct, without the necessity of notice of the full extent of the injury, the fact of actual negligence, or precise cause." Majority Opinion at 178, 964 A.2d at 364.

Under this approach, a plaintiff who has constructive knowledge of some harm, but does not know that such harm is the result of her physician's actions, will be forced to commence a cause of action in order to comply with the ticking statute of limitations *via* the discovery rule, but will nevertheless find her case dismissed with prejudice under the COM rules as she will not be able to supply the requisite statement from a licensed professional to substantiate her claim.

Based upon our adoption of the COM requirements and to protect blameless plaintiffs who are unsuspecting of a possible malpractice claim due to the latent nature of their injury, as

1. To obtain relief under Rule 3051, a plaintiff in a medical malpractice action must demonstrate that: (1) the petition to open the judgment of *non pros* is timely filed; (2) there is a reasonable explanation or legitimate excuse for the inactivity, here, the failure to file the COM; and (3) there is a meritorious cause of action. Pa.R.C.P. 3051.

well as false assurances given by their treating physician, I would align Pennsylvania with most other jurisdictions adopting the view that equates the term "injury" with "legal injury," and commences the statute of limitations when the plaintiff has actual or constructive knowledge, not of the harm, but of the cause of action associated with such harm. *See Rathje v. Mercy Hosp.*, 745 N.W.2d 443, 452–53 (Iowa 2008) (collecting case and explaining that most courts "triggered the discovery rule upon knowledge of the cause of action, including at least some knowledge that the conduct of the physician was negligent or wrongful."). This approach is consistent with the specific requirements in the COM rules and with the public policy of reducing the number of frivolous medical malpractice actions filed by plaintiffs who are seeking to protect their interests before they obtain a medical diagnosis regarding the cause of their injury. Further, I note that this approach is not foreign to our jurisprudence, as it was essentially applied by the Superior Court in *Caro v. Glah*, 867 A.2d 531 (Pa.Super.2004), to a factual predicate remarkably similar to that presented here.

The majority candidly recognizes that "were we to apply the view prevailing in most other jurisdictions requiring knowledge of a cause of action, it does not appear that the statute of limitations question would even be an issue for the jury in the present circumstances, since there appears to be no evidence that Appellant possessed evidence of wrongdoing, or enough information to understand she had a cause of action, before October 2001 [which was two years prior to the filing of the action on October 10, 2003]." Majority Opinion at 181, n. 12, 964 A.2d at 366, n. 12, *citing Brin v. S.E.W. Investors*, 902 A.2d 784, 793 (D.C.2006) ("Since patients must rely on their doctors, a person cannot reasonably be expected or required to act until that person has some medical advice to support a linkage between a known injury and wrongdoing of which the person has some evidence.").

This realization is compelling and must be remedied, particularly in a vehicle, such as this one, where the undisputed facts demonstrate a diligent investigation into the cause of

Appellant's injury, yet an inability to discover such cause due to repeated reassurances by the physician who purportedly caused the harm. Here, following her August 4, 2000 surgery, Appellant continued treating with Appellee ("Dr. El–Daief") for the next thirteen months. During that time, after Appellant complained concerning her post-operative state, Dr. El–Daief referred her to orthopedic surgeon, James Nutt, M.D., who repeatedly referred her back to Dr. El–Daief. While Dr. Nutt reported to Dr. El–Daief a differential diagnosis encompassing four possibilities, one of which was a laceration of the radial nerve, neither Dr. El–Daief nor Dr. Nutt ever conveyed to Appellant the possibility that Dr. El–Daief's malpractice was the cause of her maladies. At her last visit to Dr. Nutt's office, he adamantly required that she return to Dr. El–Daief, who subsequently reassured her that nothing was wrong.[2]

At this point in time, in September of 2001, after nearly twenty medical appointments, Appellant had finally lost confidence in Dr. El–Daief, even though she remained unaware of the cause of her injury. On October 10, 2001, less than three weeks after concluding that "something was wrong," Appellant sought and visited a third physician, Dr. Scott Fried, who ultimately performed surgery on April 23, 2003, which revealed that Appellant's maladies were likely the result of Dr. El–Daief having lacerated her radial nerve during her surgery in August 2000. It was not until this point in the proceedings that Appellant was aware of the cause of her injury. Further, and importantly, it was not until this point in the proceedings that Appellant possessed the knowledge necessary for her to obtain a certificate of merit from a medical professional, attesting to the fact that there exists a reasonable probability that Dr. El–Daief's care fell outside acceptable professional standards and that such conduct was a cause in bringing about her injury. Appellant filed the instant action on October 10, 2003, less than seven months later. This record clearly estab-

**2.** While it is not in the record, as a matter of common sense, we can divine that Dr. Nutt was appreciative of Dr. El–Daief's referral of this as well as other patients, and was not about to jeopardize the referral relationship by explaining to Appellant that Dr. El–Daief's malpractice was the cause of her difficulties.

lishes that Appellant's investigation was not only diligent in ascertaining the existence and cause of her injury, but was unremitting. Under these circumstances, I would find, as a matter of law, that her action was timely filed.

This conclusion is on all fours with the Superior Court's analysis in *Caro*, which recognized the tension between our application of the discovery rule and a plaintiff's duty to file a certificate of merit. In *Caro*, the plaintiff underwent surgery on her left knee in May of 1998. Following the surgery, she continued to experience pain, but the defendant/physician assured her that the pain would subside as the tissues healed. On July 14, 1999, the plaintiff obtained a second opinion from another physician, who merely encouraged her to continue treatment. Finally, on September 14, 1999, the plaintiff was examined by a third doctor, who informed her that she had suffered a fractured patella during the surgery performed by the defendant in 1998. The plaintiff did not commence her action within two years of when she incurred the injury, but filed it on September 13, 2001, within two years of receiving the medical diagnosis of the injury and its cause.

As in the instant case, the trial court granted the defendant's motion for summary judgment on the grounds that the action was untimely. The Superior Court reversed, concluding, as a matter of law, that the plaintiff's action was filed within the requisite two-year period. The court found that the plaintiff diligently investigated, but did not become aware of her injury or who caused it until she consulted with the third physician on September 14, 1999, and therefore the discovery rule applied to toll the statute of limitations on her claims. *Id.* at 537.

The Superior Court set forth the identical analysis as set forth herein to the extent it concluded that the statute of limitations could not have commenced in July of 1999, when the plaintiff lost confidence in her physician, because the plaintiff would have been unable to comply with the certificate of merit requirements of Pa.R.C.P. 1042.3(a) at that time. *Id.* at 538. The court ruled that, in light of the new requirements of Rule 1042.3, evidence that an injured party appeared to

have lost confidence in his or her physician, without more, is insufficient to trigger the running of the statute of limitations where a plaintiff has diligently sought to discover the cause of his or her injury. *Id.*

I would adopt the approach taken in *Caro* and conclude that, where a plaintiff has diligently sought to discover the cause of his or her injury, the statute of limitations begins to commence when the plaintiff obtains medical evidence sufficient to enable the plaintiff to link his or her injury to the acts of the defendant, and thereby possesses the requisite knowledge to obtain a COM in support of the claim asserted.[3]

Applying such law to the facts presented, I would conclude that Appellant engaged in a diligent investigation into the nature and cause of her injury, and that there is no genuine issue of material fact that she was unaware of the nature of her injury and its cause until she obtained the medical diagnosis from Dr. Fried on April 23, 2003.[4] Thus, I would conclude that Appellant's action filed on October 10, 2003 was timely filed as a matter of law.

Justice McCAFFERY joins this concurring and dissenting opinion.

**3.** Contrary to the majority, I respectfully do not view this approach as constituting a policy decision reserved for the legislature. While it is clear that the ultimate issue lies in whether the statute of limitations has been satisfied, the approach advocated herein concerns not the statute itself, but rather the interplay of the judicially-created discovery rule and the court-imposed rules of civil procedure. Thus, I believe that it is within our judicial authority and, in fact, our obligation to reexamine our precedent in light of the countervailing interests discussed herein.

**4.** I acknowledge that a determination of whether the discovery rule applies will ordinarily be left for the jury because ordinarily there will be genuine issues of material fact. *See Fine v. Checcio,* 582 Pa. 253, 870 A.2d 850, 858 (2005) (providing that a jury ordinarily determines whether the discovery rule applies because such issue involves a factual determination as to whether a party was able, in the exercise of reasonable diligence, to know of the injury and its cause). In the instant case, however, it is undisputed that Appellant was unaware of the nature of her injury or its cause until she obtained the medical diagnosis from Dr. Fried on April 23, 2003. As there are no facts to submit to a jury, the general rule as established in *Fine* is inapplicable to this case.