**In re PHAR–MOR, INC. SECURITIES LITIGATION.**

**PHAR–MOR, INC., et al., Plaintiffs,**

v.

**GENERAL ELECTRIC CAPITAL CORPORATION, et al., Defendants.**

Civ. A. Nos. 92–1938, 94–0272.
MDL No. 959.
Master File No. Misc. 93–96.

United States District Court,
W.D. Pennsylvania.

April 4, 1994.

Stephen H. Warren, Los Angeles, CA, for Phar–Mor, Inc. Securities Litigation.

R. Daniel Scheid, Denver, CO, for General Electric Capital Corp.

Richard J. Stone, Miami, FL, for Equitable Life Assur. Co.

William B. Dawson, Dallas, TX, for Foxmeyer Drug Co.

Edwin L. Klett, Pittsburgh, PA, for Elizabeth A. Vaughan.

## *OPINION*

ZIEGLER, Chief Judge.

Pending before the court is the motion of plaintiffs, Phar–Mor, Inc. and fifteen affiliated companies (collectively the "Debtors") for a preliminary injunction to enjoin certain of their creditors (the "Creditor–Defendants") who have filed civil actions (the "Creditor Actions") against the Debtors' former certified public accounting firm, Coopers & Lybrand ("Coopers"). The Debtors seek to enjoin the further prosecution of the Creditor Actions by the Creditor–Defendants pursuant to section 105 of the Bankruptcy Code, 11 U.S.C. § 105. For the reasons that follow, we will deny the Debtors' motion.

This action originated in the United States Bankruptcy Court for the Northern District of Ohio as Adversary Proceeding No. 93–4084 in *In re Phar–Mor, Inc., et al.,* Case Nos. 92–41599 through 92–41614. On January 31, 1994, prior to the resolution of the motion, the Judicial Panel on Multidistrict Litigation transferred the action to this court as part of the consolidated proceedings in *In re Phar–Mor, Inc. Securities Litigation,* MDL No. 959 (W.D.Pa.)

The Debtors filed voluntary petitions for relief under title 11 of the Bankruptcy Code shortly after Phar–Mor publicly disclosed that certain of its employees had engaged in fraud and financial manipulation which painted a false picture of profitability for the company and concealed substantial operating losses. Reorganization proceedings are currently on-going in the bankruptcy court.

At about the same time that it filed for bankruptcy, Phar–Mor initiated a civil action against Coopers for negligence and breach of contract. The action is now pending before this court as *Phar–Mor, Inc. v. Coopers & Lybrand,* C.A. No. 92–1938 (W.D.Pa.) (the "Coopers Litigation") and is part of the MDL. The Coopers Litigation stems from the fact that, during the period of the fraud, Coopers was engaged by Phar–Mor to audit its financial statements. Coopers' audits failed to uncover the fraud and "clean" audit opinions were issued following each audit. Phar–Mor alleges in the Coopers Litigation that the audits were negligently performed and that Coopers failed to satisfy its contractual obligations to Phar–Mor.

In addition to the bankruptcy proceedings and the Coopers Litigation, the Phar–Mor fraud has given rise to a number of civil suits by creditors and equity investors of Phar–Mor against Coopers and others. These actions have all been consolidated in this court by the multidistrict panel.

The Creditor–Defendants are all creditors of Phar–Mor who have filed civil actions against Coopers.[1] Each of the Creditor Actions assert, *inter alia,* tort claims against Coopers for negligence. Certain of the Creditor Actions also assert claims for fraud and securities law violations. The Creditor-

---

1. As of the date of this opinion, the following Creditor Actions are pending in the MDL: *Brentwood Originals, Inc. v. Coopers,* C.A. No. 93–0250; *FoxMeyer Drug Co. v. Coopers,* 93–0933; *The Equitable Life Assurance Society of the United States v. Shapira,* C.A. No. 93–0631; *General Electric Capital Corp. v. Coopers,* C.A. No. 93–1164; *Revlon Consumer Products Corp. v. Coopers,* C.A. No. 93–1226; *Chas. Levy Company v. Coopers,* 93–1338; *H.T. Marketing, Inc. v. Ratcliffe,* C.A. No. 93–1643; *Heleasco Thirty Five Inc. v. Shapira,* C.A. No. 93–1749; *Bell Atlantic Tricon Leasing Corp. v. Coopers,* C.A. No. 93–1797; *The Gillette Company v. Coopers,* C.A. No. 93–1925; *FoxMeyer Drug Co. v. Freedman,* C.A. No. 93–2071; *Grove Associates, Inc. v. Coopers,* C.A. No. 93–2089; *Computer Leasing, Inc. v. Coopers,* C.A. No. 94–0086; *Baker NYE Special Credits, Inc. v. Coopers,* C.A. No. 94–0213; *FBL Partners v. Coopers,* C.A. No. 94–0266; *Westinghouse Credit Corp. v. Shapira,* C.A. No. 92–2193; *Nestle Food Company v. Coopers,* C.A. No. 94–0429.

Defendants allege that they relied on Coopers' audit opinions in extending credit to Phar–Mor. In short, they contend that had Coopers performed its audits in accordance with generally accepted auditing standards, Coopers would have uncovered the fraud and the Creditor–Defendants would not have extended credit to Phar–Mor.

■ The Debtors now seek to stay the Creditor Actions pursuant to section 105(a) of the Bankruptcy Code, which provides that:

The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of the process.

11 U.S.C. § 105(a). This section of the Code authorizes a court to use its equity powers to "fashion such orders as are necessary to further the substantive provisions of the [Code]." *Matter of Oxford Management, Inc.,* 4 F.3d 1329, 1333 (5th Cir.1993). The authority granted by § 105(a) includes the power to issue injunctions staying litigation pending in other courts. *See In re Eagle– Picher Industries, Inc.,* 963 F.2d 855 (6th Cir.1992). However, while the grant of authority is broad, a court may not create substantive rights in favor of a debtor that are in addition to the rights bestowed by the Code if such rights do not also exist outside of bankruptcy law. *Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988); *Southern Railway Co. v. Johnson Bronze Co.,* 758 F.2d 137, 141 (3d Cir.1985) (section 105(a) "does not authorize the bankruptcy court to create rights not otherwise available under applicable law."); *United States v. Sutton,* 786 F.2d 1305, 1308 (5th Cir.1986) ("statute does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a

roving commission to do equity."); *In re Florida Bay Banks, Inc.,* 156 B.R. 673 (Bankr.M.D.Fla.1993) (statute does not elevate bankruptcy court to "super court" status; court's equitable powers must derive from other Code provisions).

■ In *Eagle–Picher,* the Court of Appeals for the Sixth Circuit stated that a court must consider the traditional factors governing the issuance of preliminary injunctions in determining whether to issue an injunction under § 105(a). These factors are: (1) the likelihood of success on the merits, (2) whether the plaintiff will suffer irreparable injury if an injunction is not issued, (3) the harm to others if an injunction is issued, and (4) whether the grant of an injunction would serve the public interest. 963 F.2d at 858. Here, the Debtors contend that a weighing of these factors supports their argument that an injunction should be granted.

■ As rehearsed, the equity power granted under § 105 must stem from another provision of the Code. Therefore, before we may consider the enumerated factors for the issuance of an injunction, we must determine whether the relief requested is contemplated within the Code, or whether such relief would create rights in the Debtors which were heretofore non-existent, either in bankruptcy law or civil law.

■ The Debtors contend that the issuance of an injunction would further the purposes underlying 11 U.S.C. § 362(a)(3), which provides that the filing of a bankruptcy petition "operates as a stay, applicable to all entities, of any act to obtain possession of property of the estate or to exercise control over property of the estate." [2] It is undisputed that the Coopers Litigation is the property of the estate. The Debtors' argument is, in essence, that the Creditor Actions are derivative of the Coopers Litigation and, therefore, must be stayed as attempts to obtain or control property of the estate. We disagree.

Initially, we hold that the Creditor Actions belong to the Creditor–Defendants and are

---

2. The Debtors do not seek a stay of the Creditor Actions pursuant to § 362 but rely on the broader equity provisions of § 105. They contend that

the policies underlying the enactment of § 362 support the issuance of a § 105 injunction.

not property of the estate. Each of the Creditor–Defendants claim that they provided credit or merchandise on credit to Phar–Mor in reliance on Coopers' audit opinions. These claims are personal to the Creditor–Defendants and each must establish the requisite elements of a tort claim to prevail against Coopers, including duty of care, negligence, reliance, causation and damages. *See Edwards v. Armstrong World Industries, Inc.,* 6 F.3d 312, 318 (5th Cir.1993) ("property of the debtor cannot be extended to include the separate obligations of the non-bankrupt [third party]"); *Begier v. Price Waterhouse,* 81 B.R. 303, 305 (E.D.Pa.1987) (action for negligence against accounting firm alleging that creditors relied on false financial statements are personal to creditors and cannot be asserted by trustee of debtor).

 Moreover, the fact that the Debtors were also injured by the alleged negligent audits does not transform the Creditor Actions into derivative claims. The Creditor Actions are based on the premise that Coopers breached a duty of care to each of the Creditor–Defendants. They do not rely on Coopers' alleged breach of its contractual obligations or duties to Phar–Mor. *See In re M & L Business Machine Co. (Amazing Enterprises v. Jobin, Inc.),* 136 B.R. 271 (Bankr.D.Colo.1992) (rejecting similar "derivative claims" argument of trustee of debtor). As recognized by the Court of Appeals in *A.H. Robins Co. Inc. v. Piccinin,* 788 F.2d 994 (4th Cir.1986), *cert. denied,* 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986), the Code was not intended to stay actions which assert that a nondebtor is "independently liable as, for example, where the debtor and another are joint tort feasors or where the nondebtor's liability rests upon his own breach of duty." 788 F.2d at 999 (quoting *In re Metal Center,* 31 B.R. 458 (Bankr.D.Conn. 1983)).

 We also do not agree that the pursuit of the Creditor–Actions is "tantamount to taking charge" of Phar–Mor's claims against Coopers, *see* Debtors' Memorandum of Points and Authorities, p. 16, and the continued prosecution of the Creditor Actions will not compromise Phar–Mor's ability to assert its own claims against Coopers. In addition, enjoining the Creditor Actions would abuse the authority provided by § 105. We have little doubt that granting a stay of the Creditor Actions would be a boon to the Debtors' reorganization process, but we will not, in furtherance of that goal, trample the rights of the Creditor–Defendants to assert their independent and distinct claims against a non-bankrupt third party.

 The Debtors' concern that the continued prosecution of the Creditor Actions could result in a "race to the courthouse" is of no moment to the instant issue. The Code is designed to eliminate a "race to the courthouse" by creditors seeking to file claims against a *debtor.* Here, any "race" that may occur would be for the purpose of lodging claims against a non-debtor, which is not a bankruptcy concern. Moreover, the fact that the Creditor Actions may result in disproportionate recoveries by certain creditors is also irrelevant. The Code is concerned only with a disproportionate *distribution* of the debtor's estate. The fact that a creditor may gain additional relief from sources other than the property of the estate does not contravene the Code's provisions or policies.

In sum, we find no support in either bankruptcy or civil law to elevate the Debtors' claims over the independent and distinct claims of the Creditor–Defendants. Therefore, there is no basis for the grant of a § 105 injunction. If, under the facts of each Creditor Action, the law recognizes a duty on the part of Coopers running directly to the benefit of the Creditor–Defendants, the Creditor–Defendants must be permitted to pursue their claims.

 Furthermore, even were we to find that § 105 provided a basis upon which an injunction could issue here, we would not grant the Debtors' request because we hold that the Debtors have failed to establish that the continued prosecution would cause them irreparable harm. To establish the need for injunctive relief, the Debtors have the burden of proving that there is "the danger of imminent irreparable harm to the estate or [the Debtors'] ability to reorganize." *In re Monroe Well Services, Inc.,* 67 B.R. 746, 752 (Bankr.E.D.Pa.1986). The Debtors contend

that pursuit of the Creditor Actions diminishes the possibility of settlement of the Coopers Litigation and also could delay the Debtors' reorganization and confirmation of the plan. While this may ultimately be true, it is at present mere speculation and does not constitute the type of proof required to entitle the Debtors to an injunction. *Dore & Associates Contracting, Inc. v. American Druggists' Ins. Co.*, 54 B.R. 353, 358 (Bankr. W.D.Wis.1985) ("when it is alleged that irreparable harm to the debtor's reorganization will result it is necessary to present strict proof of the facts and circumstances proving the likelihood of irreparable harm. Speculative and conclusory allegations are clearly insufficient.") Moreover, in our judgment, these concerns do not rise to the level of irreparable harm.

▌ In addition, we are not persuaded that the Creditor Actions will diminish the ability of Phar–Mor to recover against Coopers. There is no basis at this juncture to conclude that Coopers, a solvent partnership, will be unable to satisfy any and all judgments which may be rendered against it.

▌ Finally, the harm to the Creditor–Defendants should an injunction be issued outweighs any harm to the Debtors. As rehearsed, a stay of the Creditor Actions would act to subrogate the rights of the Creditor–Defendants to those of the Debtor against a non-bankrupt defendant, which is not contemplated by the Code. Moreover, the issuance of an injunction would effectively place Phar–Mor in the position of litigating the Creditor–Defendants' claims. The Debtors contend that such a result would not harm the Creditor–Defendants because their claims against Coopers are much stronger than those asserted in the Creditor Actions. We are not convinced that this is universally true. While the issues of privity and duty of care may be more easily established by Phar–Mor than various Creditor–Defendants, Coopers may have defenses against Phar–Mor which it may not have against some of the Creditor–Defendants, namely, contributory and/or comparative negligence arising from the fact that Phar–Mor employees were engaged in the fraudulent scheme. Thus, we are not persuaded that all Creditor–Defen-

dants would be better served if their claims were litigated by the Debtors as part of the Coopers Litigation.

The cases cited by the Debtors in support of an injunction are inapposite. In those cases, the courts held that the claims asserted or which would be asserted outside of the bankruptcy proceeding were property of the estate or would have a definite and direct effect on the property of the estate. As explained, the Creditor Actions neither belong to the Debtors nor produce any definite negative consequence to the Debtors' property that would warrant equitable action.

We hold that § 105 provides no basis for the court to grant an injunction to stay the Creditor Actions and, even if it did, that the Debtors have failed to establish that they would suffer irreparable harm in the absence of equitable relief. The Debtors' motion for a preliminary injunction will be denied.

▌ Finally, the Equitable Life Assurance Society of the United States, one of the Creditor–Defendants, and its co-plaintiffs in C.A. No. 93–0631, seek sanctions against the Debtors under Rule 11 of the Federal Rules of Civil Procedure. Equitable Life claims that the allegations by the Debtors in this action are baseless and intended to inflict needless expense and delay. There is no merit to Equitable Life's contentions and we will deny the request for sanctions. Sanctions are appropriate under Rule 11 only if a reasonable inquiry by the Debtors would have revealed that the claim was not well-grounded in fact and law. *Davis v. Veslan Enterprises*, 765 F.2d 494, 497 (5th Cir.1985). We find that the Debtors' request for an injunction, while unsuccessful, had sufficient legal and factual support to raise a genuine issue as to the appropriateness of an injunction under the circumstances.

An appropriate order will follow.

### ORDER OF COURT

AND NOW, this 4th day of April, 1994,

IT IS ORDERED that the motion of plaintiffs, Phar–Mor, Inc., *et al.*, for a preliminary injunction and stay of litigation under section

105 of the Bankruptcy Code be and hereby is denied.

IT IS FURTHER ORDERED that the request of defendants, the Equitable Life Assurance Society of the United States, *et al.*, for sanctions pursuant to Fed.R.Civ.P. 11 be and hereby is denied.