# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

James E. Rupert,                              :
                                             :
                    Appellant                :
                                             :
        v.                                   :  No. 90 C.D. 2020
                                             :  Argued: September 23, 2021
Campus Crafts, Inc. and Bradco               :
Supply Co., Inc.                             :
                                             :
        v.                                   :
                                             :
Velvet Comly, William D. Comly, Jr.,         :
Pennsylvania Department of                   :
Transportation of the Commonwealth           :
of Pennsylvania, Spring Township,            :
West Penn Power Company,                     :
FirstEnergy Corp., FirstEnergy               :
Solutions Corp. f/k/a FirstEnergy            :
Services Corp., U.S. Municipal               :
Supply, Inc. and Vision Metalizers,          :
Inc.                                         :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge (P.)
           HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                          FILED: October 27, 2021


        James E. Rupert (Plaintiff) appeals the order of the Centre County
Court of Common Pleas (trial court) sustaining the Motions for Judgment on the
Pleadings filed by the Pennsylvania Department of Transportation (PennDOT) and

Campus Crafts, Inc. (Campus), and in which Bradco Supply Co., Inc. (Bradco), Velvet Comly and William Comly, Jr. (collectively, Comly), Spring Township (Township), West Penn Power Company, FirstEnergy Corp., formerly known as FirstEnergy Services Corp. (collectively, FirstEnergy), U.S. Municipal Supply, Inc. (U.S. Municipal), and Vision Metalizers (Vision) joined. We affirm.

The extensive and complex factual and procedural history of this case may be summarized, in relevant part, as follows. On July 3, 2014, Velvet Comly traveled in a motor vehicle in the northbound lane of Township Route 567 to its intersection with State Route 550 in Centre County. Reproduced Record (R.R.) at 323a. At the same time, Plaintiff traveled east on a motorcycle on State Route 550 toward the intersection. *Id.* In turning left onto State Route 550, Velvet Comly relied on a convex mirror at the intersection. *Id.* at 19a, 82a, 326a. Seeing no traffic approaching the intersection in the mirror, Velvet Comly pulled out into the intersection to make the turn, where her vehicle collided with Plaintiff's motorcycle. *Id.* at 324a. Plaintiff sustained serious injuries from the collision. *Id.* at 19a-22a. A passenger on a motorcycle following Plaintiff also sustained injuries from the accident, but his injuries were not as severe.

At the time of the collision, the sight distance approaching the intersection is limited because Township Route 567 slopes downward to the intersection while State Route 550 crests upward along a curve. R.R. at 603a, 604a, 609a, 610a. PennDOT permitted the Township to place the mirror at the intersection at the Township's request so that drivers on Township Route 567 would have increased sight distance of traffic traveling east on State Route 550. *Id.* at 604a. There was a yellow sign posted below the mirror, which stated "VEHICLES ARE CLOSER THAN THEY APPEAR." *Id.* at 604a, 613a.

2

A month after the accident, two of Plaintiff's engineering experts, Justin Schorr and Steven Schorr, inspected the accident scene and ultimately concluded that deficiencies in the curvature of the mirror, including the shortness of the mirror's radius, did not provide Velvet Comly with additional sight distance of State Route 550. R.R. at 326a-328a. Specifically, the experts noted that PennDOT "specifies that traffic mirrors are required to have a minimum radius of curvature of 80 inches," and that "[m]easurements of the convex mirror at the intersection of [Township Route 567] and [State Roue 550] demonstrate that the radius of curvature (at the time of the collision) was 52.8 inches, indicating that the mirror failed to meet the required specifications." *Id.* at 328a.[1] As a result, the mirror provided Velvet

---

[1] In relevant part, PennDOT Publication 46, Chapter 11.10 states:

> Flat mirrors are unacceptable for use at highway intersections because they provide a very small field of vision and require every observer's eyes to be at the proper location to effectively use the mirror. On the other hand, convex mirrors overcome the alignment issue and have been used along highways with some success despite the following inherent problems:
>
> 1. The image is distorted and reversed.
>
> 2. Vehicles appear to be much farther away than they actually are. For example, the image of an approaching car when it is 100 feet away from the mirror will be only about 2 to 2.5 inches wide on a standard convex mirror.
>
> 3. Mirrors require routine cleaning and are subject to vandalism.
>
> 4. Mirrors are fairly expensive (approximately $250).
>
> 5. Unfamiliar drivers require time to become oriented when attempting to use a mirror.

* * *

**(Footnote continued on next page…)**

3

Comly with less than 100 feet of sight distance while her unaided vision would have had 125 feet of sight distance. *Id.* at 327a. The experts made the following relevant conclusions:

> 8. The 52.8-inch radius convex mirror present at the time of the collision did not add any additional sight distance compared to what is visible to the naked eye when simply looking to the left at the edge of the roadway. By using a deficient mirror at this intersection, a more hazardous situation was created than if the correct mirror had been installed or if *no mirror had been installed at all*.
>
> 9. There were other applicable counter measures available to correct the problems created by the insufficient sight distance at the intersection. One such countermeasure includes restricting multi-direction travel on [Township Route 567] by making it one-way (southbound) from [State Route 550] to Green Street. The available data is consistent with the impacts of this change being minimal in terms of additional delays for local operators.

---

> Convex mirrors are normally available at local glass dealers. As a minimum, they shall:
>
> 1. be designed for exterior use;
>
> 2. be made of "Plexiglas" or shatterproof glass;
> 3. have a minimum diameter of 36 inches; and
>
> 4. have a minimum radius of curvature of 80 inches.
>
> If possible, position convex mirrors directly ahead of the intended user on the far side of the roadway, but it is best to experiment at other locations prior to permanently installing it. The angle formed between the observer, the mirror and the approaching vehicles should be 90 degrees or less. Typically, mount convex mirrors 10 to 15 feet above the roadway surface and brace it to reduce the chances of it becoming misaligned.

R.R. at 645a-646a.

4

10. The intersection of [Township Route 567] and [State Route 550] is hazardous in that the sight distance does not meet PennDOT's minimum requirements. This hazard was not alleviated by placing the traffic mirror in question which (like the intersection sight distance) failed to meet PennDOT's minimum requirements.

*Id.* at 329a (emphasis in original).

On May 28, 2015, Plaintiff filed a Complaint in the trial court against PennDOT, the Township, Comly, and Nationwide Insurance. R.R. at 266a-292a. In the Complaint, Plaintiff alleged, *inter alia*, that PennDOT was negligent for "failing to provide adequate . . . mirrors, . . . which would warn and/or permit motorists, and in particular motorcyclists, to safely traverse the . . . intersection between [State Route 550] and [Township Route 567], or to safely detour around same or in the alternative, improperly placing said . . . mirrors[,]" and for "failing to install an appropriate mirror at the . . . intersection of [State Route 550] and [Township Route 567], . . . so that traffic entering the intersection from [Township Route 567 has] adequate sight distance." R.R. at 273a, 274a-275a. Appended to the Complaint is a Verification executed by Plaintiff in which he states, in relevant part, that the Complaint "is based upon information, which [he has] furnished to my counsel and information, which has been gathered by [his] counsel in preparation for the prosecution of this lawsuit," "and to the extent [that] it is based upon information which [he has] given to [his] counsel, it is true and correct to the best of [his] knowledge, information, and belief." *Id.* at 291a.

On August 31, 2015, Plaintiff filed a filed a First Amended Complaint (2015 Complaint) in the trial court against PennDOT, the Township, Comly, and Nationwide Insurance. R.R. at 294a-321a. In the First Amended Complaint, Plaintiff alleged, *inter alia*, that PennDOT was negligent in the following respects:

a.	allowing a dangerous, defective, hazardous, inadequate mirror to exist at the intersection of [State Route 550] and [Township Route 567] . . . for motorists' use in aiding visibility of other traffic approaching the aforesaid intersection that created a reasonabl[y] foreseeable risk of the kind of injury suffered by Plaintiff[] at the intersection of [State Route 550] and [Township Route 567];

* * *

c.	failing to correct the inadequate mirror existing at the intersection of [State Route 550] and [Township Route 576], . . . for motorists' use in aiding visibility of other traffic approaching the aforesaid intersection that created a reasonabl[y] foreseeable risk of the kind of injury suffered by Plaintiff[];

d.	the creation and maintenance of a defective, hazardous, inadequate, and dangerous mirror for motorists' use in aiding visibility of other traffic at the intersection of [State Route 550] and [Township Route 567], . . . as it applies to motorists' and motorcyclists' safety, that created a reasonabl[y] foreseeable risk of the kind of injury suffered by Plaintiff[] at the intersection of [State Route 550] and [Township Route 567];

* * *

g.	failing to provide adequate . . . mirrors, . . . which would warn and/or permit motorists, and in particular motorcyclists, to safely traverse the . . . intersection between [State Route 550] and [Township Route 567], or to safely detour around same or in the alternative, improperly placing said . . . mirrors[;]

h.	failing to correct the inadequate mirror existing at the intersection of [State Route 550] and [Township Route 567] . . . for motorists' use in aiding visibility of other traffic approaching the aforesaid intersection that created a reasonabl[y] foreseeable risk of the kind of injury suffered by Plaintiff[] at the intersection of [State Route 550] and [Township Route 567];

6

\* \* \*

j.　negligence in the creation and/or maintenance of [a] defective, hazardous and/or dangerous[ly] inadequate mirror existing at the intersection of [State Route 550] and [Township Route 567] . . . for motorists' use in aiding visibility of other traffic approaching the aforesaid intersection that created a reasonabl[y] foreseeable risk of the kind of injury suffered by Plaintiff[] at the intersection of [State Route 550] and [Township Route 567];

k.　failing to properly and adequately hire and/or instruct the agents, . . . workmen, . . . and/or representatives of [PennDOT] and/or [the] Township as to the safe and proper procedures for inspecting, . . . correcting and repairing an inadequate mirror . . . at the aforesaid intersection of [State Route 550] and [Township Route 567];

\* \* \*

o.　failing to install an appropriate mirror at the aforesaid intersection of [State Route 550] and [Township Route 567], . . . so that traffic entering the intersection from [Township Route 567] have adequate sight distance.

R.R. at 306a-310a. Appended to the 2015 Complaint is a Verification executed by Plaintiff in which he states, in relevant part, that the Complaint "is based upon information , which [he has] furnished to [his] counsel and information, which has been gathered by [his] counsel in preparation for the prosecution of this lawsuit," "and to the extent [that] it is based upon information which [he has] given to [his] counsel, it is true and correct to the best of [his] knowledge, information, and belief." *Id.* at 317a.

On September 8, 2015, Plaintiff served the Township with a request to produce the following documents:

52.　Any and all documents prior to the accident described in Plaintiff['s] Complaint and up until the

7

present date pertaining [to or] regarding [the Township's] decision to install a mirror at the intersection in question, [State Route 550] and/or [Township Route 567] . . . at the area of the accident described in Plaintiff['s] Complaint.

R.R. at 569a. In response to the request, "[f]ollowing the exchange of written discovery, it was not until January 17, 2017, that the deposition of Gary Royer from the [Township] was taken," and "[d]uring that deposition, it was learned for the first time where the mirror was obtained by [the] Township and *then* it was on January 25, 2017, that [the] Township provided 'supplemental discovery responses' with information concerning the mirror itself." *Id.* at 504a-505a (emphasis in original and citations omitted). Although "[i]t is not clear to Plaintiff why these documents were not turned over in response to [his] September 8, 2015 request," *id.* at 505a, there is no indication in the record that he filed a motion in the trial court to compel the production of any additional documents from the Township at any time. Ultimately, that matter was "resolved and discontinued" with respect to all claims and all parties. *Id.* at 501a.[2]

On December 27, 2016, Plaintiff hired James Sobek, P.E., to prepare another expert report, which was issued on February 17, 2017. R.R. at 602a-622a. In the report, the expert concluded, in relevant part:

The actual 52.8 inch radius of curvature mirror that is currently in place, the effective sight distance as viewed in the mirror is only 187 feet for drivers with 20/20 vision and 94 feet for drivers with 20/40 vision, substantially less than is required by PennDOT standards and not sufficient

---

[2] On July 18, 2016, Plaintiff filed a Complaint against FirstEnergy alleging negligence with respect to the dangerous and/or hazardous conditions of the premises owned or maintained by it at and/or near the intersection of State Route 550 and Township Route 567. *See* R.R. at 481a-491a. On August 12, 2017, Plaintiff executed a Pro Rata Joint Tortfeasor Release and Settlement Agreement resolving the claims against FirstEnergy in that case and in the proceedings on Plaintiff's First Amended Complaint. *See* Original Record (O.R.) Docket Entry No. 27, Exhibit A at 1-9.

8

for human recognition and response to approaching vehicles on [State Route 550] heading eastbound.

It [is] our opinion that [the] Township, by selecting and installing that mirror, made the situation worse than if there was no mirror present at all and motorists are safer if they ignore the presentation in the mirror and depend upon what they see directly. Making this bad situation even worse and more dangerous was the placement of a mirror with the incorrect radius of curvature.

*Id.* at 606a-607a.

As a result, the expert opined:

With a required 390 feet sight distance for left turning vehicles, even a mirror with an 80 inch radius of curvature will only produce an image that is 0.41 inches wide and subtends 2.41 arc minutes, nowhere close to what will be required to make a decision as to whether or not there is a vehicle coming that is so close [as] to be a problem. Thus, PennDOT's policy is inadequate and does not make the intersection safer, and, in fact, even using a convex mirror that complies with their guidelines does not increase the sight distance sufficiently and makes the intersection more dangerous.

* * *

[There are] several alternatives [that] exist to remedy the poor visibility circumstances at this intersection. We defer to an appropriate engineer for any additional details, however. An obvious one (and probably the lowest financial cost) would be to make [Township Route 567] one-way only to the south thereby avoiding anyone having to deal with the limited sight distances to east and west.

A tri-color traffic signal with a demand circuit arranged such that the east-west traffic always has a green light until a vehicle arrives northbound. Given the limited sight distance to the west, it would seem that a NO TURN ON RED prohibition would also be in order.

9

It is not likely feasible to improve the sight distance by excavating enough terrain at each cut slope. And the costs of moving all or even part of the power substation are certainly prohibitive.

It is clear to me that until some change is made to this intersection, collisions will continue to occur, some of them serious. Clearly though, putting in a mirror with a longer radius of curvature is in order first and should be do[ne] immediately until such other more appropriate and adequate changes can be implemented with more planning. In order to provide an adequate view to drivers with 20/40 vision, a mirror with curvature radius of 263 inches will create an image that subtends 5 arc minutes at a vehicle-mirror distance of 390 feet. But, because traffic on eastbound [State Route] 550 approaching [Township Route 567] is traveling along a right-hand curve and thus more or less directly at the mirror, a physically larger mirror might not be required. Most drivers within their vehicles come to a stop with their eyes well within the projected field of view that the mirror now provides. They don't have to move left or right or farther forward or back to see into the mirror. But the image that the mirror currently provides is far too small.

However, even with the correct radius mirror in place, the left-right reversal produced by convex and plane mirrors will continue to be a problem. It is confusing to see a vehicle coming at you "in the wrong lane" in the mirror image. It is worse to see a vehicle in the mirror, misinterpret the lane that [it] is in (right versus left) and then to incorrectly conclude after a momentary view that the vehicle is moving away from you. Even with over 50 years' experience in the field of optics, we found the appearance of vehicles coming and going in that mirror's presentation to be unexpected and initially very confusing. It was only after applying our optical experience that we began to understand what was actually in the image and the degree to which objects have been reduced in size.

R.R. at 618a, 620a.

10

On January 17, 2017, Gary Royer, the Township's Road Manager, testified during a deposition regarding the maintenance of the mirror at the intersection of State Route 550 and Township Route 567 in 2013. *See* R.R. at 572a-573a. He stated that a new mirror was installed at the intersection in 2013, and that it had been purchased from Bradco. *See id.* at 573a-574a. On January 25, 2017, in a supplemental discovery response, the Township provided Plaintiff with a copy of the invoice for the purchase of the mirror from Bradco and a copy of the mirror's installation instructions. *See id.* at 576a-581a. On March 2, 2017, Bradco sent Plaintiff a copy of the sales invoice for the mirror and its installation instructions in response to a subpoena. *See id.* at 582a-599a.

On November 27, 2017, Plaintiff filed a new Complaint against Campus and Bradco alleging in Count I, *inter alia*, negligence with respect to the design, construction, manufacture, and testing of the mirror, and that they placed the mirror into the stream of commerce for purchase by the Township in this defective state, which resulted in Plaintiff's serious and permanent injuries. R.R. at 366a-367a, 370a-372a. In Count II, Plaintiff alleged, *inter alia*, strict liability due to placement of the mirror into the stream of commerce for purchase by the Township in its unreasonably dangerous and defective condition based on its improper and inadequate design and manufacture, and based on their failure to warn of the mirror's dangerous condition resulting in Plaintiff's serious and permanent injuries. *Id.* at 372a-373a. Finally, in Count III, Plaintiff alleged a breach of express or implied warranty by Campus and Bradco's provision of the dangerous and defective mirror that was neither adequate nor suitable for its intended uses resulting in Plaintiff's serious and permanent injuries. *Id.* at 373a-374a.

11

On January 31, 2018, Campus filed a Joinder Complaint against Additional Defendants the Comlys, PennDOT, the Township, FirstEnergy, U.S. Municipal, and Vision. *See* R.R. at 95a-141a. The Joinder Complaint alleged, in pertinent part, that William Comly owned the car that was operated by Velvet Comly and involved in the collision. *Id.* at 104a. The Joinder Complaint also alleged that PennDOT and/or the Township owned, controlled, repaired, or maintained State Route 550 and Township Route 567, acted as each other's agent in this regard, and knew or should have known of the dangerous condition of these roadways. *Id.* at 104a-105a. The Joinder Complaint also alleged that FirstEnergy owned, controlled, and maintained property at or near the intersection of State Route 550 and Township Route 567, including the maintenance of vegetation, acted as each other's agent in these respects, and knew or should have known of the dangerous condition of these premises that created an unreasonable hazard to people traveling on these roadways. *Id.* at 105a-106a. The Joinder Complaint also alleged that, in the ordinary course of its business, U.S. Municipal manufactured, designed, labeled, marketed, distributed, supplied, sold, or placed into the stream of commerce the alleged Sentinel Convex Mirror, which was purchased by the Township in a new and unused condition for use at the intersection of the roadways. *Id.* at 106a-107a. The Joinder Complaint also alleged that, in the ordinary course of its business, Vision manufactured, designed, labeled, marketed, distributed, supplied, sold, or placed into the stream of commerce the alleged Sentinel Convex Mirror, which was purchased by the Township in a new and unused condition for use at the intersection of the roadways. *Id.* at 110. The Joinder Complaint asserted claims of: (1) negligence against Velvet Comly, PennDOT, the Township, FirstEnergy, and Vision; (2) negligent entrustment

12

against William Comly; (3) strict liability against U.S. Municipal and Vision; and (4) breach of express and implied warranties against Vision. *Id.* at 108a-141a.

On March 5, 2018, Plaintiff filed a three-count Second Amended Complaint (2017 Complaint) against Campus and Bradco again alleging negligence, strict liability, and breach of express or implied warranty resulting in his serious and permanent injuries. R.R. at 16a-30a.[3] In relevant part, the 2017 Complaint also alleged:

> 8. Plaintiff did not learn until after January 8, 2017, following an inspection of the mirror by [Sobek,] a professional engineer with particular expertise in optics and mirrors[,] that a cause of his injuries was a dangerous and defective mirror, said properties of the mirror that rendered it dangerous and defective and not proper for its intended purpose not being within the general knowledge of lay persons.
>
> 9. This accident resulted solely from the negligence and/or breach of warranties of [Campus and/or Bradco] herein, and was due in no manner whatsoever to any act, failure to act or misuse on the part of [] Plaintiff.
>
> 10. At no time did [] Plaintiff, or any other person or entity, abuse or misuse the aforesaid Sentinel Convex Mirror or utilize it in a[] manner for which it was not designed and intended nor fail to follow any instructions or warning sold with or affixed to said Sentinel Convex Mirror.

*Id.* at 19a.

On March 12, 2018, the Township filed an Answer with New Matter to Campus's Joinder Complaint in which it asserted in New Matter:

---

[3] In the interim, Plaintiff filed a three-count First Amended Complaint asserting the same causes of action against Campus and Bradco. *See* O.R. Docket Entry No. 15.

83. Plaintiff's and [Campus's] claims are barred by the statute of limitations.

84. Plaintiff was aware of the alleged defective radial curvature of the mirror on August 8, 2014, when his expert, DJS Associates, performed a site inspection, including high definition surveying, laser scans and three dimensional measurements.

O.R. Docket Entry No. 31 at 13, ¶¶83, 84.

On March 14, 2018, Bradco also filed a Joinder Complaint against Additional Defendants the Comlys, PennDOT, the Township, FirstEnergy, U.S. Municipal, and Vision. *See* R.R. at 181a-226a. The Joinder Complaint asserted claims of: (1) negligence against Velvet Comly, PennDOT, the Township, FirstEnergy, U.S. Municipal, and Vision; (2) negligent entrustment against William Comly; (3) strict liability against U.S. Municipal and Vision; and (4) breach of express and implied warranties against Vision. *Id.* at 194a-226a.

On March 16, 2018, Campus filed an Answer and New Matter to Plaintiff's 2017 Complaint, which stated in New Matter: "Plaintiff's claims are, or may be, barred by the applicable Statute of Limitations." O.R. Docket Entry No. 36 at 10, ¶22.

On March 31, 2018, FirstEnergy filed a voluntary petition for bankruptcy in the United States Bankruptcy Court for the Northern District of Ohio (bankruptcy court). R.R. at 33a-34a. On April 17, 2018, FirstEnergy filed a Notice of Suggestion of Pendency of Bankruptcy and Automatic Stay of Proceedings in the trial court, which resulted in the trial court staying the instant proceedings on the 2017 Complaint. *See id.* at 31a-38a, 40a. On Plaintiff's motion, on October 24, 2018, the bankruptcy court issued an order continuing the stay as to all claims against FirstEnergy, but lifted the stay as to all remaining parties in the instant action thereby granting the trial court discretion to sever FirstEnergy from the instant proceedings.

14

*See id.* at 41a-45a. On March 18, 2019, the trial court issued an order granting Plaintiff's motion to lift the stay as to all parties in the proceedings on the 2017 Complaint except FirstEnergy. *Id.* at 47a-48a.

On March 29, 2019, PennDOT filed a Motion for Judgment on the Pleadings, which alleged, in relevant part:

> 17. Plaintiff filed [the 2015 Complaint] on August 31, 2015, which alleged that PennDOT was negligent for allowing a dangerous and defective mirror to exist at the intersection. . . .
>
> 18. During the litigation of the case[,] Plaintiff's experts Justin Schorr, Ph.D. and Steven Schorr, P.E., conducted a site inspection on August 8, 2014, which included examination of the mirror at issue. . . .
>
> 19. This matter is barred by the two-year statute of limitations which expired on July 3, 2016, and the ["discovery rule"] does not apply. 42 Pa. C.S. §5524(2).[4]
>
> 20. It is the duty of the party asserting a cause of action to use all reasonable diligence to properly be informed of the facts and circumstances upon which the right of recovery is based; and to institute a lawsuit within the applicable statute of limitations.
>
> 21. The discovery rule is a limited exception to the prescribed statute of limitations when the facts and circumstances of the cause of action could not have been discovered despite the exercise of reasonable diligence.

* * *

---

[4] Section 5524(2) of the Judicial Code states, in pertinent part, that "[t]he following actions and proceedings must be commenced within two years: . . . An action to recover damages for injuries to the person . . . caused by the wrongful act or neglect or unlawful violence or negligence of another."

15

23. The discovery rule is inapplicable if a plaintiff has the reasonable ability to discover the facts necessary, regardless of whether the party actually ascertained the information.

24. Plaintiff pled in [the] verified [2015 Complaint] that he believed the mirror at issue was dangerous and defective and contributed to the happening of his July 3, 2014 crash.

25. [Pa.R.Civ.P.] 1024 provides that "every pleading containing an averment of fact not appearing of record in the action or containing a denial of fact shall state that the averment or denial **is true upon the signer's personal knowledge or information and belief**. ([E]mphasis added).

26. Thus, by at least August 31, 2015, at the latest, Plaintiff swore that he had personal knowledge, information, and a belief that the mirror at the intersection was dangerous and/or defective and contributed to the accident and his injuries.

27. Plaintiff had the duty to use reasonable diligence to research the facts and circumstances of his case, including but not limited to, his belief that the dimensions and specifications of the mirror allegedly contributed to the crash.

28. The mirror is out in the open, and was examined by a civil engineer at the direction of Plaintiff in 2014, including taking measurements and researching standards.

29. Reasonable minds could not differ that Plaintiff had the ability to investigate and pursue his claim regarding the mirror within the two-year statute of limitations as a matter of law.

30. Therefore, Plaintiff's case filed on November 27, 2017[,] is untimely, because the statute of limitations expired and the discovery rule does not apply.

R.R. at 74a-76a (citations omitted and emphasis in original). Accordingly, PennDOT asked the trial court to grant judgment in its favor on the pleadings, and dismiss Plaintiff's 2017 Complaint as untimely. *Id.* at 77a.

On April 2, 2019, U.S. Municipal filed an Answer with New Matter to Campus's Joinder Complaint in which it asserted in New Matter:

> 83. The instant matter is time barred by the applicable statute of limitations. This matter arose on July 3, 2014, though it was not filed until November 27, 2017. Although U.S. Municipal anticipates that Plaintiff will likely contend that he was not aware of the potential lawsuit until retention of an expert witness and the expert's subsequent inspection in 2017, the same was an investigation that could have been conducted at any time after the accident, and thus, is time barred.

O.R. Docket Entry No. 72 at 13, ¶83.

On April 8, 2019, Campus filed a reply and joinder in PennDOT's Motion for Judgment on the Pleadings. *See* O.R. Docket Entry No. 74. That same day, Campus also filed a Motion for Judgment on the Pleadings alleging, in relevant part, that the 2017 Complaint is time barred because the statute of limitations in Section 5524(2) had run before it was filed, and that the discovery rule does not apply. *See* R.R. at 342a-348a. Specifically, Campus asserted that "at the very least by **August 31, 2015**, Plaintiff swore he had personal knowledge, information and belief that the mirror at the intersection was dangerous and/or defective and contributed to the accident and his injuries," and that "[r]easonable minds cannot differ that this case filed by Plaintiff on **November 27, 2017**, as the accident occurred on **July 3, 2014**, and therefore, is untimely because the statute of limitations has expired and the discovery rule does not apply." *Id.* at 347a-348a.

17

On April 15, 2019, Vision filed an Answer with New Matter to Campus's Joinder Complaint, which alleged, in pertinent part, that "[t]he averments in the [2015 Complaint] were verified by [Plaintiff] on August 26, 2015," so that "as of at least August 26, 2016, [Plaintiff] reasonably believed, and averred in a verified pleading that there existed a condition with the mirror at the intersection at issues in this matter," and that "[t]his lawsuit was initiated on November 27, 2017, in which Plaintiff alleges the same mirror is dangerous and defective," so, "[t]herefore, the current action is barred by the statute of limitations." Docket Entry No. 82 ¶¶58-61. Ultimately, with the exception of Vision,[5] all of the remaining Defendants and Additional Defendants filed or joined in the Motions for Judgment on the Pleadings filed by PennDOT and Campus. *See, e.g.*, O.R. Docket Entry Nos. 84, 95, 104, 117.

On April 29, 2019, Plaintiff filed a Response in Opposition to both PennDOT's and Campus's Motions for Judgment on the Pleadings admitting the relevant allegations raised therein. *See* R.R. at 496a-824a. Nevertheless, in a memorandum of law filed in opposition to PennDOT's Motion, Plaintiff asserted, in relevant part:

> It was during the December 27, 2016, through February 17, 2017 (the date of Mr. Sobek's report)[,] timeframe that Plaintiff learned the mirror was a defective product for its intended/foreseeable purpose (traffic control device). In fact, no other engineering expert, **including the defendants' own experts**, knew or should have known of this fact as they were not trained in physics with expertise in optics. In fact, defense expert Joseph M. Fiocco, P.E., studied engineering and was a traffic

---

[5] As noted by Vision in its appellate brief, although Vision did not file a motion for judgment on the pleadings or join in the other motions, "this Court's order affirming [the trial court's] order will establish law of the case on the controlling issue [of] whether [Plaintiff] filed [h]is complaint after the statute of limitations. *Farber v. Engle*, [525 A.2d 864, 866 n.5 (Pa. Cmwlth. 1987)]." Brief for Appellee Vision at 2.

engineer. Defense expert Joseph P. Tarris, P.E., studied Civil Engineering and was a traffic engineer. Neither of these experts with extensive training and skill in engineering and traffic formed an opinion that the mirror was defective as a defense nor did counsel who employed them seek to join the manufacturer of the mirror. Moreover, PennDOT with teams of engineers did not conclude that convex mirror[s] are dangerous products for use in controlling traffic, even to the extent of having policies in place for their use. **Thus, simply stated, defendants seek to hold Plaintiff, who attended schooling to the 11th grade, "knew" or "should have known" what 4 engineers were unable to conclude, and that he should have imputed to him the knowledge and skill of a physicist with training in optics**. If defendants wish to make such an argument, **it is a jury question**, and not a matter of law.

R.R. at 505a-506a (citations omitted and emphasis in original).

By Opinion and Order dated September 27, 2019, the trial court granted

the Motions for Judgment on the Pleadings. *See* R.R. at 832a-837a. In relevant part,

the trial court explained:

In the present matter, Plaintiff's cause of action lies in negligence, thus invoking the two-year statute of limitations. Therefore, from the time of the accident on July 3, 2014, Plaintiff generally had a two-year period of time to file his complaint. However, the complaint, as already stated, was not initiated until November 27, 2017. Despite the fact that Plaintiff had previously hired experts to conduct an inspection of the allegedly defective mirror in **2014**, thus invoking Plaintiff's claim of defective condition and breach of warranty, he claims that it was not until January of 2017 that he learned that the cause of his injuries was the dangerous and defective mirror. This claim by Plaintiff was following a second inspection conducted by a professional engineer with expertise in optics, which clearly could have been done earlier.

. . . The burden is on [] Plaintiff to *reasonably investigate* the cause of injury in order to gain an understanding of the

19

facts concerning that injury. Plaintiff and his experts had access to the mirror, which existed out in the open and therefore, in any of the several complaints filed by Plaintiff, he certainly knew or should have known of the mirror's allegedly defective condition. . . . In the case *sub judice*, Plaintiff's injury occurred on July 3, 2014. In 2015 following site inspections by experts, Plaintiff pled and verified that the mirror was defective. As PennDOT correctly points out in its supporting brief, "[Plaintiff] was either untruthful in his original Complaint in [2015] when he signed a verification swearing that he had 'personal knowledge or information and belief' that the mirror allegedly contributed to the crash, or Plaintiff must admit that he actually held that 'personal knowledge or information and belief' before the tolling of the statute of limitations. Pa.R.[Civ.]P. 1024(a).[6]" Thus, reasonable minds cannot differ that this case filed on November 27, 2017, is untimely, as the statute of limitations has expired and the discovery rule does not apply.

*Id.* at 836a-837a (footnotes omitted and emphasis in original).

On September 30, 2019, the trial court issued an order stating, in pertinent part: "[B]ased upon the Court's recent rulings on Motions for Judgment on the Pleadings in this matter and the only remaining [Additional] Defendant[] being [FirstEnergy,] which [is] in bankruptcy, this matter is stayed until th[at Additional] Defendant [is] out of bankruptcy." R.R. at 838a.

As a result, on October 15, 2019, Plaintiff filed an Application for a Determination of Finality pursuant to Pa. R.A.P. 341(c),[7] asking the trial court to file

---

[6] Pa.R.Civ.P. 1024(a) states, in relevant part, that "[e]very pleading containing an averment of fact not appearing of record in the action . . . shall state that the averment . . . is true upon the signer's personal knowledge or information and belief and shall be verified."

[7] Pa.R.A.P. 341(c) states, in pertinent part:

When more than one claim for relief is presented in an action . . . or when multiple parties are involved, the trial court . . . may enter a

**(Footnote continued on next page…)**

20

an amended final appealable order. R.R. at 840a-862a. On October 24, 2019, the trial court filed an order in which it "determined that an immediate appeal in th[is] matter would facilitate resolution of the case in its entirety," and "expressly entered as a final Order" its September 27, 2019 order granting the Motions for Judgment on the Pleadings. *Id.* at 864a-865a. Plaintiff then filed the instant appeal to the Pennsylvania Superior Court; however, upon PennDOT's motion, the matter was transferred to this Court. R.R. at 866a-878a, 890a.[8]

> final order as to one or more but fewer than all of the claims and parties only upon an express determination that an immediate appeal would facilitate resolution of the entire case. Such an order becomes appealable when entered.

[8] Following the transfer, by February 6, 2020 order, we directed the parties "to address in their principal briefs on the merits . . . whether this Court may proceed with the appeal where [FirstEnergy is] in bankruptcy and where the trial court stayed the matter." R.R. at 892a. The parties have complied with our direction, and have demonstrated that we may proceed with this appeal. As indicated, the automatic stay under Section 362(a)(1) of the federal Bankruptcy Code, 11 U.S.C. §362(a)(1), only provides protection to the bankruptcy debtor and not to a non-debtor third party absent extraordinary circumstances. *Bankers Trust Company v. Tax Claim Bureau of Delaware County*, 723 A.2d 1092, 1093-94 (Pa. Cmwlth. 1999). No extraordinary circumstances are alleged to exist herein. Additionally, the automatic stay is "not intended to stay actions which assert that a non-debtor is 'independently liable as, for example, where the debtor and another are joint tortfeasors or where the non-debtor's liability rests upon his own breach of duty.'" *In re Phar-Mor, Inc. Securities Litigation*, 166 B.R. 57, 62 (W.D. Pa. 1994) (citation omitted).

As outlined above, the October 24, 2018 bankruptcy court order continued the stay as to all claims against FirstEnergy, but lifted the stay as to all remaining parties in this case thereby granting the trial court the discretion to sever FirstEnergy from the case. *See* R.R. at 41a-45a. The March 18, 2019 trial court order granted Plaintiff's motion to lift the stay as to all parties in the case except FirstEnergy. *Id.* at 47a-48a. Thus, although FirstEnergy is not part of the trial court's ruling on the Motions for Judgment on the Pleadings, the court properly certified its order as final and appealable under Pa. R.A.P. 314(c) with respect to the remaining parties because FirstEnergy had already been severed from the case at that time. Moreover, our disposition of this appeal will establish law of the case on the dispositive issue of whether Plaintiff filed his 2017 Complaint after the statute of limitations had expired. *See Farber*, 525 A.2d at 866 n.5 ("The doctrine of 'law of the case' provides that where an *appellate court* has considered and decided a question on appeal,

**(Footnote continued on next page…)**

21

On appeal,[9] Plaintiff claims that the trial court erred in granting the Motions for Judgment on the Pleadings because the discovery rule applies in this case and the question of its application should be submitted to a jury. Plaintiff asserts that he adduced multiple facts establishing that he acted with reasonable diligence in investigating and prosecuting his claims, so that the trial court erred in determining that the discovery rule was inapplicable herein as a matter of law.[10]

_____

that court will not, in a subsequent appeal of another phase of the same case, reverse its previous ruling, even though convinced it was erroneous.") (citation omitted and emphasis in original).

[9] As the Pennsylvania Supreme Court has recently observed:

> When reviewing a trial court's order sustaining judgment on the pleadings, our standard of review is to determine whether, based on the facts the plaintiffs pled, "the law makes recovery impossible." A judgment on the pleadings will be granted where, on the facts averred, the law says with certainty that no recovery is possible. We regard as true all well-pleaded allegations in [the plaintiff's] pleadings as []he is the non-moving party, and consider against h[im] only those factual allegations in the [defendant's] pleadings that [the plaintiff] has admitted.

*Rice v. Diocese of Altoona-Johnstown*, 255 A.3d 237, 244 (Pa. 2021) (citations omitted).

[10] Specifically, in support of the invocation of the discovery rule, Plaintiff claims that: (1) he had professional engineers perform a site inspection of the premises before any lawsuit was filed; (2) his failure to recognize that the convex mirror was a dangerous and defective product is reasonable because PennDOT and its engineers did not recognize the same; (3) he was diligent in sending discovery requests that were not answered for more than a year; (4) his initial civil and traffic engineers, and Defendants' civil and traffic engineers, did not recognize that the convex mirror was a dangerous and defective product; (5) PennDOT's policies regarding the use of convex mirrors leads one to conclude that a convex mirror is not a dangerous or defective product; (6) the police report regarding the collision cited Velvet Comly as the cause of the accident in violation of the Vehicle Code, 75 Pa. C.S. §§101-9805, and did not recognize that the mirror was defectively designed; and (7) he was not provided with discovery regarding the mirror product until January 2017, and filed suit against Campus and Bradco within two years of that discovery. Brief of Appellant at 64-65.

22

In *Rice*, the victim of sexual abuse by her parish priest between 1974 and 1981, filed a complaint against the priest, the Diocese of Altoona-Johnstown (Diocese), and the Diocese's bishops on June 20, 2016, alleging breach of fiduciary duty, fraud, and conspiracy. The victim did not report the abuse to the authorities until 2006. In 2014, the Cambria County District Attorney referred a number of claims of sexual abuse by priests in the Diocese to the Pennsylvania Attorney General. On March 1, 2016, the Thirty-Seventh Investigating Grand Jury issued a report in which it determined, *inter alia*, that the Diocese's bishops further endangered children by returning known abusive priests to its parishes, and that secret archives existed that were used to hide information regarding the sexual abuse. The report also showed that the parish priest had abused other victims and that the Diocese was made aware of the abuse. *Rice*, 255 A.3d at 241-42.

In her 2016 complaint, the victim alleged that she first learned from the 2016 Grand Jury report that the Diocese was aware of, and protected, the abusive priests, and knew or should have known of the parish priest's sexual attraction to young children and his abuse of them. The Diocese filed an answer and new matter to the complaint, raising a statute of limitations defense, and a motion for judgment on the pleadings. Specifically, the Diocese asserted that the last sexual assault occurred in 1981, and that the statute of limitations had run long before the complaint was filed in 2016. The trial court granted the motion and dismissed the complaint, and the Superior Court reversed. *Id.* at 242.

However, on further appeal, the Pennsylvania Supreme Court reversed the Superior Court. With respect to the application of the statute of limitations defense, the Supreme Court explained:

> "Generally speaking, statutes of limitations are rules of law that set time limits for bringing legal claims."

23

*Nicole B. v. Sch*[*ool*] *Dist*[*rict*] *of Phila*[*delphia*], [237 A.3d 986, 993-94 (Pa. 2020)]. The time to file begins running "from the time the cause of action accrued[.]" 42 Pa. C.S. §5502(a). Normally, a cause of action accrues "when an injury is inflicted." *Wilson* [*v. El-Daief*, 964 A.2d 354, 361 (Pa. 2009)]. Thus, the clock "begins to run as soon as the right to institute and maintain a suit arises; lack of knowledge, mistake or misunderstanding do not toll the running of the statute of limitations[.]" *Pocono Int*[*ernationa*]*l Raceway, Inc. v. Pocono Produce, Inc.*, [468 A.2d 468, 471 (Pa. 1983)] (citations omitted). If the plaintiff fails to file before the clock expires, the statute of limitations bars the suit.

Various doctrines can save suits that would be otherwise untimely. . . . [T]he discovery rule, "tolls the statute of limitations when an injury or its cause is not reasonably knowable." *In re Risperdal Litig*[*ation*], [223 A.3d 633, 640 (Pa. 2019)]. The purpose of this rule is clear: to "ensure that persons who are reasonably unaware of an injury that is not immediately ascertainable have essentially the same rights as those who suffer an immediately ascertainable injury." *Nicolaou* [*v. Martin*, 195 A.3d 880, 892 n.13 (Pa. 2018)]. The plaintiff's inability to know of the injury must be "despite the exercise of reasonable diligence[.]" *Fine* [*v. Checcio*, 870 A.2d 850, 858 (Pa. 2005)]. This "is not an absolute standard, but is what is expected from a party who has been given reason to inform himself of the facts upon which his right to recovery is premised." *Id.*

In *Wilson*, we explained that two competing approaches have developed to the discovery rule. The more liberal approach, favorable to plaintiffs, "key[s] the commencement of the limitations period to such time as the plaintiff has actual or constructive knowledge of her cause of action." *Wilson*, 964 A.2d at 363 (citation omitted). In contrast, the stricter and less plaintiff favorable "inquiry notice" approach "t[ies] commencement of the limitations period to actual or constructive knowledge of at least some form of significant harm and of a factual cause linked to another's conduct, without the necessity of notice of the full extent

24

of the injury, the fact of actual negligence, or precise cause." *Id.* at 364. "Pennsylvania's formulation of the discovery rule reflects the narrower of the two overarching approaches[.]" *Id.*

The *Wilson* Court explained that adoption of the stricter approach effectuates legislative intent. "Although the discovery rule evolved out of the common law, it is now appropriately regarded as an application of statutory construction arising out of the interpretation of the concept of the 'accrual' of causes of action." *Id.* at 363 (footnote omitted). Thus, the rule "is best justified as an exercise in legislative interpretation rather than judicial innovation." *Id.* at 367. Accordingly, our ability to expand the discovery rule beyond the boundaries of the inquiry notice approach is circumscribed if not eliminated in the absence of a constitutional claim. "Absent a constitutional claim, we decline to question the legislative judgment." *Id.* at 369. We adhere to our statutory interpretations because "the legislative body is free to correct any errant interpretation of its intention." *Shambach v. Bickhart*, [845 A.2d 793, 807 (Pa. 2004)] (Saylor, J., concurring).

*Rice*, 255 A.3d at 246-47 (footnote omitted); *see also id.* at 255 ("Statutes of limitations exist 'to expedite litigation and thus discourage delay and the presentation of stale claims which may greatly prejudice the defense of such claims.' Delay is discouraged, first and foremost, through the imposition of diligence obligations that require the plaintiff to conduct investigations of potential lawsuits.") (citation omitted).

Applying the stricter "inquiry notice" approach to the discovery rule to the facts herein demonstrates that the trial court did not err in granting the instant Motions for Judgment on the Pleadings because the two-year statute of limitations had run as a matter of law by the time that Plaintiff filed the 2017 Complaint. As exhaustively outlined above, in the 2015 Complaint that Plaintiff verified, he asserted causes of action for his legal injuries based upon the defective condition of

25

the mirror. Although Plaintiff may not have been aware of the particular defect asserted in the 2017 Complaint at the time that the 2015 Complaint was filed, the "'inquiry notice' approach 't[ies] commencement of the limitations period to actual or constructive knowledge of at least some form of significant harm and of a factual cause linked to another's conduct, without the necessity of notice of the full extent of the . . . precise cause.' [*Wilson*, 964 A.2d] at 364." *Rice*, 255 A.3d at 247.

Moreover, the cases cited by Plaintiff to support the application of the discovery rule in this case are inapposite. In those cases, the discovery rule was applied because the plaintiffs therein were unaware that they had suffered the legal injury underlying the lawsuit in the first instance. In *Rice*, the Supreme Court noted:

> It is obvious that there are no circumstances that are remotely comparable to *Nicolaou* in the case before us. The question in *Nicolaou* was when the plaintiff knew she was injured. Here, tragically, [the plaintiff] knew of her injury at the time of each alleged assault and she knew that [the parish priest] caused the injury. "In Pennsylvania, a cause of action accrues when the plaintiff could have first maintained the action to a successful conclusion." *Fine*, 870 A.2d at 857 (citation omitted). An action against [the parish priest] could have been brought to a successful conclusion against [him], at the latest, in 1983 or 1987. She did not file suit against the [parish priest] and seek discovery from the Diocese. Her complaint does not allege that she made any formal or informal inquiries of the Diocese regarding, among other things, what it knew about [the parish priest], its efforts to supervise or monitor him or its protocols, in general, for the placement of priests in its parishes. [The victim] concedes that she did nothing until the grand jury report was published in 2016.

*Id.* at 251 (footnote omitted). The Court added: "As [the Superior Court in] *Meehan* [*v. Archdiocese of Philadelphia*, 870 A.2d 912, 920 (Pa. Super. 2005),] correctly

26

concluded, the real claim here is ignorance 'of a secondary cause' of the known legal injury." *Id.*

Likewise, in this case, Plaintiff's 2017 Complaint is based on a secondary cause of the known legal injury resulting from the mirror's defective condition. Although Plaintiff may have diligently filed the 2017 Complaint shortly after receiving Sobek's February 17, 2017 expert report describing another theory regarding the mirror's defective condition, there is no indication that Plaintiff could not have asserted such a claim within the relevant statute of limitations. Plaintiff's failure to timely discover a secondary basis upon which the mirror could be deemed to have been defective is not a circumstance in which the discovery rule is applied to toll the relevant statute of limitations. *Rice*. As a result, the trial court did not err in determining that the discovery rule did not apply as a matter of law, or in granting the Motions for Judgment on the Pleadings, because the applicable statute of limitations had expired at the time that the 2017 Complaint was filed in this case. *Id.*

Accordingly, the trial court's order granting the Motions for Judgment on the Pleadings is affirmed.

_____
MICHAEL H. WOJCIK, Judge

27

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

James E. Rupert, :
:
Appellant :
:
v. : No. 90 C.D. 2020
:
Campus Crafts, Inc. and Bradco :
Supply Co., Inc. :
:
v. :
:
Velvet Comly, William D. Comly, Jr., :
Pennsylvania Department of :
Transportation of the Commonwealth :
of Pennsylvania, Spring Township, :
West Penn Power Company, :
FirstEnergy Corp., FirstEnergy :
Solutions Corp. f/k/a FirstEnergy :
Services Corp., U.S. Municipal :
Supply, Inc. and Vision Metalizers, :
Inc. :

# **O R D E R**

AND NOW, this 27th day of October, 2021, the order of the Centre County Court of Common Pleas dated September 27, 2019, is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge